Kelly, J.
At issue in this case is whether the trial judge fulfilled his obligation to articulate a substantial and compelling rationale for the sentences that he imposed. For each conviction, defendant’s minimum sentence was an extreme upward departure from the range set by the sentencing guidelines. We conclude that the judge articulated adequate reasons to support a departure, but failed to justify the extent of this departure.
We hold that the departure was an abuse of discretion because the trial judge did not establish why the sentences imposed were proportionate to the offense and the offender. Therefore, we vacate defendant’s sentences and we remand this case to the trial judge for resentencing and articulation of the rationale for the extent of any departure made on remand.
FACTS AND PROCEDURAL HISTORY
This is a case involving sexual abuse of a child. The victim’s mother began taking the victim to defendant’s home for day care when she was one year old. Over time, the mother developed a friendship with defendant and with his wife. The victim, whose family fife was fatherless, chaotic, and disorganized, began to see defendant as a father figure. When the mother was sent to a halfway house for nine months for drug abuse, the victim and her younger sister moved into defendant’s home. Eventually, the mother moved to Atlanta, Georgia, taking her children with her. However, the families stayed in touch and remained close. The victim and her sister returned to *296 Michigan dining the summers to spend time with defendant and his wife.
When the mother lost her job in Atlanta, defendant and his wife offered to rent her a room. She accepted. After the school year ended, she sent her daughters back to Michigan to live with defendant and his wife. The victim was nine years old at the time. The mother followed her daughters to Michigan at the end of the summer. She, her two daughters, and their younger brother all shared a room in defendant’s home.
The victim testified that defendant began to sexually abuse her when she was nine years old. All the assaults were similar. When the victim was alone on a couch with defendant watching television, defendant would touch her buttocks and penetrate her vagina and anus with his finger. The victim testified that defendant’s actions frightened her and that defendant would stop assaulting her when she got up and left the room. The victim also testified that defendant threatened that he would evict her family from the house if she told anyone about the assaults.
The assaults continued over a 15-month period, until the victim revealed them to a friend. The information made its way to the victim’s mother, who called the police. Defendant was charged with and a jury convicted him of three counts of first-degree criminal sexual conduct (CSC-I).[1] The recommended minimum sentence range under the sentencing guidelines was 9 to 15 years’ imprisonment. The prosecutor requested that the trial judge sentence defendant to a minimum sentence at the high end of the guidelines with a “very, very lengthy tail.”[2]
*297 The judge went further than requested. He imposed a minimum sentence for each conviction that exceeded the guidelines recommendation, explaining:
This is the type of case that I think manifests the absolute worst type of exploitation. A child was placed in a position of trust and care with the defendant and his wife. This was at a time a 10 year old child had come from a clearly dysfunctional family, and this was an opportunity for [defendant] to provide a sense of refuge and a sense of stability clearly for [the victim].
There was no male figure in her life, and [defendant] had that opportunity to fill that role, which could have been not only a blessing for him but certainly a blessing for [the victim].
Those of us who have daughters certainly understand that fathers are in a very unique position with regard to their daughters and that we have the opportunity in many respects based on our relationship and the nature of the relationship that we have with our daughters to model or pattern the iype of healthy or unhealthy relationship that young women then grow up to have with men in the future as adults.
And so what happened here? Here this 10 year old child looking for, and in fact starved for a positive adult male role model ends up being over a period of about 15 months a sex toy for the defendant. To what extent she will be damaged in the future, who knows? One certainly hopes that she will be able to do well.
But certainly this was a circumstance where [defendant] chose to exploit this relationship. And then in his testimony to blame the child, categorize her as a liar.
And through this particular ordeal forcing the victim, this 10 year old, to have to go through a rather, for her, for a 10 year old, the kind of frightening gynecological type of examination certainly adding to the trauma in this particular *298 case, I think that certainly the Michigan Supreme Court in People versus Babcock has stated that if the Court is going to go outside the guidelines, the Court must in fact look to objective and verifiable facts and circumstances in evidence.
Certainly it is an objective and verifiable fact that the defendant stood in the role of a parental figure for a child who had none. That this was a child who was sexually exploited over a period of 15 months. That’s verifiable.
These are the characteristics that I think don’t adequately get covered in the guidelines. They don’t. I mean it’s unimaginable to me to think that a 10 year old who may be fearful of the fact that she may lose the roof over her head for herself, her mother and her two siblings, is forced to silently endure this kind of sexual exploitation.
The guidelines didn’t calculate that, but I am.
On a departure evaluation form, the judge summarized his reasons for the departure: (1) defendant’s role as a child-care provider,[3] (2) the period over which the abuse occurred, (3) the defendant’s threat to evict the victim and her family if she told anyone about his conduct, and (4) the gynecological examination the victim was forced to undergo. The judge sentenced defendant to three concurrent terms of 30 to 50 years’ imprisonment, with credit for 23 days served. The minimum term of 30 years’ imprisonment is twice the highest minimum term defendant could have received had the judge sentenced him within the guidelines recommendation.
*299 The Court of Appeals affirmed defendant’s convictions and sentences in an unpublished opinion per curiam.[4] It concluded that the reasons the judge gave for departure were objective and verifiable.[5] It further concluded that the judge did not abuse his discretion in determining that his reasons were substantial and compelling.[6] Finally, the Court of Appeals held that the sentences were proportionate to the seriousness of the crimes.[7]
Defendant applied for leave to appeal in this Court. We ordered oral argument on whether to grant the application or take other peremptory action.[8]
THE TRIAL COURT’S INITIAL BURDEN TO ARTICULATE SUBSTANTIAL AND COMPELLING REASONS FOR DEPARTURE
Under MCL 769.34(3), a minimum sentence that departs from the sentencing guidelines recommendation requires a substantial and compelling reason articulated on the record. In interpreting this statutory requirement, the Court has concluded that the reasons relied on must be objective and verifiable. They must be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court’s attention.[9] Substantial and compelling reasons for departure exist only in exceptional cases.[10] “In determining whether a sufficient basis exists to justify a departure, the principle of proportionality . . . defines the standard against which the allegedly substantial and compelling reasons *300 in support of departure are to be assessed.”[11] For a departure to be justified, the minimum sentence imposed must be proportionate to the defendant’s conduct and prior criminal history.[12]
The trial court may not base a departure “on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight.”[13]
On appeal, courts review the reasons given for a departure for clear error.[14] The conclusion that a reason is objective and verifiable is reviewed as a matter of law.[15] Whether the reasons given are substantial and compelling enough to justify the departure is reviewed for an abuse of discretion, as is the amount of the departure.[16] A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes.”[17]
Under MCL 769.34(7), the court must advise a defendant that he or she may seek appellate review of a sentence that is more severe than the guidelines recommendation. There is no preservation requirement for review of such a sentence.[18]
*301 In this case, the trial judge articulated the reasons for his departure. In particular, he referred to the 15-month period over which the serial abuse occurred. The fact that defendant abused the victim for more than a year was not reflected in the guidelines.
That sexual abuse occurred over a long period is an objective and verifiable reason for departure. The abuse in this case was not something that was completed quickly. For more than a year, the victim undoubtedly suffered psychological stress from the realization that defendant might abuse her again and again. This fact is of considerable worth in determining defendant’s minimum sentence. Also, it is a fact that does not exist in all criminal sexual conduct cases. Hence, the trial judge did not abuse his discretion in concluding that the long period of abuse provided a substantial and compelling reason for departure.
The judge also relied on the fact that defendant threatened to retaliate by evicting the victim and her family if she disclosed to anyone his predatory sexual behavior. This is objective and verifiable because the threat was external to the minds of those involved and could be confirmed on the record. The judge did not abuse his discretion in concluding that this fact provided a substantial and compelling reason to depart. It was not considered in the guidelines, and making such a threat to a child could cause significant psychological anguish. It forced the child to choose between reporting the defendant’s repeated criminal assaults and protecting her family from homelessness. The threat was distinct enough to actively and strongly draw the judge’s attention.
The judge additionally relied on the gynecological examination the victim underwent as a result of defendant’s sexual abuse. Defendant contends that such examinations are to be expected when sexual abuse has been alleged and *302 cannot constitute a substantial and compelling basis for departure. Defendant is correct that commonplace repercussions of criminal activity do not support departures, which may be made only in exceptional cases.[19] This is because the sentencing guidelines are designed to promote uniformity in criminal sentencing by “ ‘ensuring] that offenders with similar offense and offender characteristics receive substantially similar sentences.’ ”[20] Hence, we agree that this repercussion of criminal sexual conduct would not generally represent such a wide deviation from the norm that a departure could be premised on it.
However, under the unique circumstances of this case, the trial judge’s conclusion that the gynecological examination provided a substantial and compelling reason for departure was not an abuse of discretion. The evidence indicates that the examination added considerably to the victim’s trauma. This trauma was demonstrated by the victim’s testimony that the examination was uncomfortable and embarrassing. More significantly, it was demonstrated by her behavior during the examination. Under these circumstances, the judge did not abuse his discretion in concluding that this repercussion of defendant’s behavior was of considerable worth in determining the length of defendant’s minimum sentence.[21]
*303 By citing these facts that justified departure in this case, the trial judge met the initial burden of articulation.
PROPORTIONALITY
Having concluded that the trial judge cited substantial and compelling reasons to justify a departure, we turn to the question whether the reasons also justified the particular departure: a minimum sentence that is 15 years more than the top of the guidelines range. “The obligation is on the trial court to articulate a substantial and compelling reason for any departure.”[22] However, the statutory guidelines require more than an articulation of reasons for a departure; they require justification for the particular departure made.
MCL 769.34(3) states:
A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in *304 chapter XVII if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure. [Emphasis added.]
We have stressed that this statutory language requires the trial court to “justify the particular departure in a case, i.e., ‘that departure.’ ”[23]
Appellate courts are obliged to review the trial court’s determination that a substantial and compelling reason exists for departure.[24] Accordingly, the trial court’s justification “must be sufficient to allow for effective appellate review.”[25] In Babcock, this Court explained that an appellate court cannot conclude that a particular substantial and compelling reason for departure existed when the trial court failed to articulate that reason.[26] Similarly, if it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified. A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear. When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been.
The “principle of proportionality. . . defines the standard against which the allegedly substantial and compelling reasons in support of departure are to be assessed. ”[27] Hence, to complete our analysis of whether the trial judge in this case articulated substantial and compelling reasons for the departure, we must, of *305 necessity, engage in a proportionality review. Such a review considers “whether the sentence is proportionate to the seriousness of the defendant’s conduct and to the defendant in light of his criminal record...”[28] “[Everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment.”[29]
As we noted in Babcock, the very purpose of the sentencing guidelines is to facilitate proportionate sentences. We stated:
Under the guidelines, offense and prior record variables are scored to determine the appropriate sentence range. Offense variables take into account the severity of the criminal offense, while prior record variables take into account the offender’s criminal history. Therefore, the appropriate sentence range is determined by reference to the principle of proportionality; it is a function of the seriousness of the crime and of the defendant’s criminal history.[30]
A sentencing departure is appropriate when “there are substantial and compelling reasons that lead the trial court to believe that a sentence within the guidelines range is not proportionate to the seriousness of the defendant’s conduct and to the seriousness of his criminal history... .”[31] The departure from the guidelines recommendation must “contribute to a more proportionate criminal sentence than is available within the guidelines range.”[32]
Here the trial judge gave no explanation for the extent of the departure independent of the reasons given *306 to impose a departure sentence. Therefore, no justification was offered to support the large departure made.
One potential means of offering such a justification is to place the specific facts of a defendant’s crimes in the sentencing grid. When that is done in this case, the result suggests that the sentence imposed was disproportionate. Defendant’s crimes are classified as class A felonies.[33] The minimum sentence ranges for class A offenses (in months) are contained in the following grid:[34]
Prior Record Variable Level (Total PRV Points)
[[Image here]]
The prior record variable (PRV) level is determined by the total points assessed for the prior record variables *307 scored. The offense variable (OV) level is determined by the total points assessed for the offense variables scored.
Defendant had a total PRV score of 20 points, which corresponds to a PRV level C.[35] The trial judge assessed 10 points for OV 10 (exploitation of a vulnerable victim) and 50 points for OV 11 (criminal sexual penetration), resulting in a total OV score of 60 points.[36] This corresponds to an OV level IV Defendant’s recommended minimum sentence range of 108 to 180 months is found by locating the intersection of PRV level C and OV level IV on the sentencing grid for class A felonies.[37]
The trial judge sentenced defendant as if his OV and PRV scores corresponded to the E-VI, F-V or F-VI cell of the grid.[38] These cells provide the highest possible minimum sentences for class A felonies. For defendant’s sentence to fall within the guidelines recommendation for the E-VI, F-V or F-VI cell, the judge would have had to assess 20 to 40 additional OV points and 30 to 45 additional PRV points. On this record, it is hard to understand what factors would justify the extent of the departure made. That difficulty is compounded by the fact that the trial judge offered no justification why this departure was a proportionate one.
It is compelling to compare defendant’s departure sentence, 30 to 50 years (360 to 720 months), with the recommended minimum sentences on the applicable *308 sentencing grid. Given defendant’s PRV level of C, his recommended minimum sentence could not have been 360 months. The highest recommended minimum sentence on the grid for that PRV level is 225 months.[39] Accordingly, simply comparing defendant’s actual minimum sentences to the recommended minimum sentences for offenders with similar criminal histories suggests that defendant’s sentences might be disproportionate.
Moreover, the substantial and compelling reasons on which the judge based his departure were related to the nature of the offense, not to the extent of defendant’s criminal history. Put otherwise, the departure reasons pertained to defendant’s OV score, not his PRV score. With regard to the OV score, it is theoretically possible for a defendant to receive a total of 590 points for a crime against a person, such as CSC-I.[40] If a defendant has a low PRV score but an OV score over 100, the court may render a proportionate sentence above the highest minimum for someone with a similar PRV score. This is *309 because the Legislature did not contemplate a defendant with such a high OV score, given that it used 100 OV points as the maximum for the grid.
However, that is not the case here, because defendant’s OV score is within the lower OV levels on the grid. Thus, the trial judge must explain why the reasons for the departure that he articulated warranted a drastic departure from the highest minimum available for a defendant with a similar PRV score. The burden will be heavy, because the sentence imposed is literally off the charts for a defendant with a criminal background similar to that of this defendant.
A comparison of defendant’s sentences to the sentences recommended for other offenders who committed the same type of crime suggests that defendant’s sentences might be disproportionate. Although the atrocity of any criminal sexual conduct offense is not to be minimized, proportionality is still judged by weighing both the nature of the offense and the offender’s criminal history. Given the fact that defendant had no criminal history, the 30-year minimum sentence imposed for each conviction might be a disproportionate departure.
Certainly, a trial court that is contemplating a departure is not required to consider where a defendant’s sentence falls in the sentencing range grid. However, we think that reference to the grid can be helpful, because it provides objective factual guideposts that can assist sentencing courts in ensuring that the “ ‘offenders with similar offense and offender characteristics receive substantially similar sentences.’ ”[41]
*310 Appellate review is also aided when a court explains the similarity between the facts justifying the departure and the facts describing a crime meriting the same sentence under the guidelines. Also, a comparison of a defendant’s characteristics and those of a hypothetical defendant whose recommended sentence is comparable to the departure sentence is a valuable exercise. This, too, will aid an appellate court in reviewing the proportionality of the departure.
The trial court should note which variables it is considering in such a comparison. It should explain why its reasons for departure are as significant as the characteristics that would produce an equally lengthy recommended minimum sentence under the guidelines.
Turning to the facts in the instant case, it is obvious that CSC-I involving a nine-year-old child is a heinous crime. It damages children, families, and friendships. But all CSC-I cases do not wreak the same amount of damage. That the sexual abuse in this case occurred over a 15-month period is extraordinarily disturbing, as the trial judge recognized. That defendant threatened to evict the victim and her family if she reported the crime is also of considerable importance in determining defendant’s sentence. That the victim underwent a traumatic gynecological examination is also of consequence.
The trial judge articulated some appropriate reasons for departure, but failed to explain why those reasons justify the extent of the departure. Furthermore, it is not readily apparent why such a substantial departure *311 is warranted on the basis of those reasons. While defendant’s crime is most certainly heinous, we cannot discern why the trial judge selected a minimum sentence so far in excess of the recommended guidelines range.[42] We cannot uphold such an unsupported departure.
As noted earlier, the sentencing guidelines were designed to promote uniformity in sentencing. One of the purposes of the proportionality requirement is to minimize idiosyncrasies. We do not suggest that trial courts must sentence defendants with mathematical certainty.[43] Nor are any precise words necessary for them to justify a particular departure.[44]
Ultimately, in reviewing sentences, appellate courts examine the reasons articulated for departure. The trial court’s articulation must be sufficiently detailed to facilitate appellate review. This includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. Here the trial judge faded to offer any valid explanation justifying why he chose to sentence defendant to minimum terms of imprisonment of 30 years. As such, we must vacate defendant’s sentences and remand the case to the trial judge so that he may articulate why this level of departure is warranted or resentence defendant.
RESPONSE TO JUSTICE CORRIGAN’S DISSENT
Contrary to Justice CORRIGAN’s assertion, our approach is completely consistent with Babcock and the language of MCL 769.34. We emphasize in this opinion *312 a point that was made in Babcock. It is that, under MCL 769.34(3), “the trial court must articulate on the record a substantial and compelling reason to justify the particular departure imposed.”[45] Although Justice CORRIGAN argues that neither Babcock nor MCL 769.34 requires that this case be remanded, she fails to identify where in the record the trial judge justified the particular departure he made. She cannot identify it because the trial judge failed to provide it. We cannot uphold a departure when the connection between the reasons given for departure and the extent of the departure is so unclear. To do so would be akin to immunizing sentencing decisions from review for proportionality. Moreover, it would undermine the Legislature’s goal in enacting the sentencing guidelines.
The Legislature adopted the guidelines to promote uniform sentencing across the state.[46] The general rule is that minimum sentences must be within the recommended guidelines range.[47] A defendant is entitled to be sentenced within that range unless the judge provides a substantial and compelling reason why a departure sentence is more proportionate to the offense and the offender. The judge must explain why a sentence outside the range better promotes uniform sentencing, in accordance with the purpose of the guidelines.
*313 Justice CORRIGAN contends that it is sufficient to further the legislative goal of sentencing uniformity to require judges to articulate substantial and compelling reasons for their departures. She argues that this requirement ensures that departures are difficult enough to justify that the exception does not swallow the rule. She further asserts that, as long as the record supports a departure, any departure sentence should be upheld on appeal as long as it is reasonable. She rejects this Court’s holding in Babcock when she opines that a judge should not be required to justify the particular departure sentence imposed.
Justice CORRIGAN relies on MCL 769.34(11), which states:
If, upon a review of the record, the court of appeals finds the trial court did not have a substantial and compelling reason for departing from the appropriate sentence range, the court shall remand the matter to the sentencing judge or another trial court judge for resentencing under this chapter.
Justice Corrigan misconstrues this provision by failing to read it in the context of the rest of the statute.
In MCL 769.34(3), the Legislature put the burden on the trial court to place on the record one or more substantial and compelling reasons for a particular departure.[48] Hence, it is the trial court that must justify on the record both the departure and the extent of the departure.[49] This is not to say that appellate courts need *314 examine only the sentencing transcript to determine if the court abused its discretion in imposing a sentence. Under MCL 769.34(11), appellate courts review the record to ascertain if the court articulated adequate reasons for the departure and to justify the extent of the departure. If, after reviewing the whole record, the connection between the reasons given for departure and the extent of the departure is unclear, then the sentence cannot be upheld.[50]
Moreover, simply requiring a court to articulate substantial and compelling reasons for a departure would not promote uniformity. Trial courts would not be constrained to impose only those sentences that they can justify. Under the rule advocated by Justice CORRIGAN, defendants with similar offense and offender characteristics could receive widely divergent departure sentences. Justice CORRIGAN would not subject sentences based on a departure to full appellate review. Any arguably reasonable sentence would be upheld, even if it were not proportionate to the offense and the offender. A lack of meaningful review would inevitably encourage idiosyncratic sentencing. Such a result is contrary to the Legislature’s express intent.[51]
*315 The requirement that the trial court justify the extent of the departure is not overly burdensome. The court need only reasonably comply with the statutory articulation requirement in order to facilitate appellate review. Justice CORRIGAN expends a great deal of energy attempting to rebut an argument that we do not make: that a trial court must provide a mathematical justification for its departure.
Our observation that grounding a departure in the sentencing guidelines will help to explain the extent of the departure does not mean that departure can be reduced to a mathematical equation. To the contrary, mathematical precision in sentencing is neither required nor possible. Nonetheless, the difference between the sentence imposed based on a departure and the recommended minimum sentence range under the guidelines is relevant to the proportionality analysis. When Justice CORRIGAN advocates upholding defendant’s sentences even though the judge failed to justify this difference, she disregards Babcock.
Justice CORRIGAN relies heavily on the United States Supreme Court decision in Gall v United States.[52] There the Court addressed whether an appellate court reviewing a substantial variance from the federal sentencing guidelines could require that the departure be justified by “extraordinary circumstances.”[53] The Gall Court *316 held that an appellate court could consider the degree of deviation from the federal sentencing guidelines when reviewing a departure.[54] However, it rejected “an appellate rule that requires ‘extraordinary’ circumstances to justify a sentence outside the Guidelines range.”[55] The Gall Court also rejected “the use of a rigid mathematical formula” in gauging the justifications for the departure.[56]
Much of the Gall Court’s analysis is inapplicable to Michigan’s indeterminate sentencing guidelines. The federal sentencing guidelines are not mandatory.[57] By contrast, a sentence in Michigan must be within the guidelines recommendation unless the court states on the record one or more substantial and compelling reasons to depart from it.[58] Substantial and compelling reasons for departure exist only in exceptional cases.[59] And when a trial court renders a departure sentence, Michigan appellate courts must review whether the court abused its discretion in concluding that extraordinary circumstances justified it.
To the extent that Justice CORRIGAN relies on Gall to reject the use of a rigid mathematical formula, her reliance is misplaced. As previously indicated, we do not adopt a rigid mathematical formula. Instead, consistently with Gall, we stress that the difference between a departure sentence and one within the recommended guidelines range is relevant to the proportionality analysis.[60] Accordingly, it is appropriate for courts to articulate the *317 required justification for departure by anchoring that justification in the sentencing guidelines.
Justice CORRIGAN buoys her position with facts that are not relevant. For instance, it is true that the trial judge in this case could have imposed a life sentence. But this fact does not bear on whether he justified the sentence he actually imposed. Similarly, Justice CORRIGAN spends considerable time discussing the behavior of defendant’s wife during the trial. But even if the wife’s behavior could be attributed to defendant, the judge did not cite it as a basis for departure. Accordingly, it cannot support the departure made.[61]
Justice CORRIGAN suggests that our analysis resembles de novo review.[62] Her assertion is unexplained and misguided. We continue to review for an abuse of discretion. We weigh whether the reasons that the trial court gave are substantial and compelling enough to justify the departure sentence imposed. In this case, the judge abused his discretion because he imposed a departure sentence without adequately justifying the extent of the departure. Therefore, the sentence falls outside the range of principled outcomes.
The analysis set forth in this opinion is consistent with MCL 769.34 and with the caselaw interpreting that statute. Moreover, it is not overly burdensome, and it advances the Legislature’s goal of sentencing uniformity. The same cannot be said for Justice CORRIGAN’S analysis.
SUMMARY
In order to assist trial courts in fulfilling their statutory obligations, we offer the following summary:
*318 (1) The trial court bears the burden of articulating the rationale for the departure it made. A reviewing court may not substitute its own reasons for departure. Nor may it speculate about conceivable reasons for departure that the trial court did not articulate or that cannot reasonably be inferred from what the trial court articulated.
(2) The trial court must articulate one or more substantial and compelling reasons that justify the departure it made and not simply any departure it might have made.
(3) The trial court’s articulation of reasons for the departure must be sufficient to allow adequate appellate review.
(4) The minimum sentence imposed must be proportionate. That is, the sentence must adequately account for the gravity of the offense and any relevant characteristics of the offender. To be proportionate, a minimum sentence that exceeds the guidelines recommendation must be more appropriate to the offense and the offender than a sentence within the guidelines range would have been.
(5) When fashioning a proportionate minimum sentence that exceeds the guidelines recommendation, a trial court must justify why it chose the particular degree of departure. The court must explain why the substantial and compelling reason or reasons articulated justify the minimum sentence imposed.
(6) It is appropriate to justify the proportionality of a departure by comparing it against the sentencing grid and anchoring it in the sentencing guidelines. The trial court should explain why the substantial and compelling reasons supporting the departure are similar to conduct that would produce a guidelines-range sentence of the same length as the departure sentence.
*319 (7) Departures from the guidelines recommendation cannot be assessed with mathematical precision. The trial court must comply reasonably with its obligations under the guidelines, as set forth in this opinion, to further the legislative goal of sentencing uniformity.
CONCLUSION
Some of the reasons that the trial judge articulated as the basis for the departure are legitimate. However, those reasons fail to justify the severity of the minimum sentences that he imposed. From our review of the record and of the judge’s reasons for departure, it is unclear why a minimum sentence of 30 years’ imprisonment is warranted for this defendant.
We vacate defendant’s sentences and remand this case to the trial judge for resentencing and for an explanation of the extent of any departure made on remand. We deny leave to appeal in all other respects.
Taylor, C.J., and Cavanagh, Young, and Markman, JJ., concurred with KELLY, J.

 MCL 750.520b(l)(a).

 Generally, the punishment for CSC-I is imprisonment for any term of years or life. MCL 750.520b(2). When the trial court chooses to sentence a defendant to a term of years, it must fix both the minimum and maximum *297 terms of the sentence. MCL 769.9(2). Here, the prosecutor requested a minimum term within the statutory guidelines recommendation. The request for a “lengthy tail” was a request for a high maximum term.

 Because the judge referred to defendant’s status as a child-care provider, defendant argues that the judge violated MCL 769.34(3)(a). That statute prohibits a judge from exceeding the guidelines because of a defendant’s legal occupation. The record indicates that defendant was not legally-working as a child-care provider during the period in question. His wife was primarily responsible for the baby-sitting services they advertised, and the home was not licensed to provide child-care. We infer from the judge’s statements that he referred to the child-care position because defendant had exploited his position of trust as a child-care provider for the vulnerable victim. We conclude that the judge did not depart on the basis of defendant’s occupation.

 People v Smith, unpublished opinion per curiam of the Court of Appeals, issued July 19, 2007 (Docket No. 267099).

 Id. at 5-6.

 Id. at 6.

 Id.

 480 Mich 1014 (2008).

 People v Babcock, 469 Mich 247, 257-258; 666 NW2d 231 (2003).

 Id.

 Id. at 262.

 Id. at 262-264.

 MCL 769.34(3)(b).

 Babcock, 469 Mich at 264.

 Id.

 Id. at 264-265.

 Id. at 269.

 MCL 769.34(7); MCR 2.517(A)(7).

 Babcock, 469 Mich at 257-258.

 Id. at 267 n 21, quoting former MCL 769.33(1)(e)(iv), which specified some of the duties at the former Sentencing Commission in connection with the sentencing guidelines as added by 1994 PA 445.

 The judge also referred to defendant’s exploitation of the victim’s vulnerability as a basis for departure. However, this exploitation was, at least partially, already accounted for in the guidelines under offense variable 10 (OV 10). MCL 777.40. An offense characteristic taken into account in determining the sentencing range may not be a basis for departure unless the judge finds that the characteristic was given inadequate or disproportionate weight. MCL 769.34(3)(b).
*303 The judge’s failure to address OV 10 leaves us unable to ascertain whether he believed the factor was given inadequate weight or whether he failed to recognize that the guidelines consider exploitation. We cannot discern whether the judge would have departed to the same degree had he referenced the offense variables, particularly OV 10, that arguably addressed some of the reasons cited for departure. This failure to address those variables is an additional basis for our remand for resentencing. See Babcock, 469 Mich at 260-261.
In her dissent, Justice Corrigan argues that this Court should infer that the judge considered the assessment of points for OV 10 and found the assessment inadequate. We disagree. The judge’s statement that the “guidelines didn’t calculate that,” referring in part to exploitation, implies that he failed to recognize that points are assessed under the guidelines for exploitation of victim vulnerability. Given this statement and the lack of any specific reference to OV 10, we will not infer that the judge concluded that OV 10 inadequately considered the factor of exploitation. Our conclusion is not the equivalent of requiring “magic words” for departure, as Justice Corrigan suggests. Post at 336. We are simply refusing to infer that the judge meant one thing when he suggested the opposite.

 Babcock, 469 Mich at 259.

 People v Hegwood, 465 Mich 432, 437 n 10; 636 NW2d 127 (2001) (emphasis in original).

 Babcock, 469 Mich at 259.

 Id. at 259 n 13.

 Id. at 258-259.

 Id. at 262.

 Id.

 Id. at 263.

 Id. at 263-264.

 Id. at 264.

 Id.

 MCL 777.16(y).

 MCL 777.62.

 The judge assessed 20 points for PRV 7 (subsequent and concurrent felonies) because, as a result of this case, defendant had two concurrent felony convictions. MCL 777.57(1)(a).

 It appears that the judge erroneously assessed 50 points for OV 11. However, defendant admits that 50 points should have been assessed for OV 13 (continuing pattern of criminal behavior). Thus, a correction would not affect defendant’s OV score.

 MCL 777.21(1)(c); MCL 777.62.

 See MCL 777.62.

 Id.

 MCL 777.22(1) requires the court to score the following offense variables for all crimes against a person (maximum scores are in parentheses): OV 1 (aggravated use of a weapon) (25 points), MCL 777.31(1)(a); OV 2 (lethal potential of weapon) (15 points), MCL 777.32(1)(b); OV 3 (physical injury to victim) (100 points), MCL 777.33(1)(a); OV 4 (psychological injury to victim) (10 points), MCL 777.34(1)(a); OV 7 (aggravated physical abuse) (50 points), MCL 777.37(1)(a); OV 8 (asportation of victim) (15 points), MCL 777.38(1)(a); OV 9 (number of victims) (100 points), MCL 777.39(1)(a); OV 10 (15 points), MCL 777.40(1)(a); OV 11 (50 points), MCL 777.41(1)(a); OV 12 (contemporaneous felonious acts) (25 points), MCL 777.42(1)(a); OV 13 (50 points), MCL 777.43(1)(a); OV 14 (offender’s role) (10 points), MCL 777.44(41)(a); OV 19 (security threats or interference with justice) (25 points), MCL 777.49(1)(a); and OV 20 (terrorism) (100 points), MCL 777.49a(1)(a). Obviously, many of these variables could not be scored in this case or in most criminal sexual conduct cases. I list them to demonstrate that more than 100 points are possible under PRV level C.

 Babcock, 469 Mich at 267 n 21, quoting former MCL 769.33(1)(e)(iv), as added by 1994 PA 445. The statutory sentencing guidelines are based on statewide sentencing data. They reflect the Legislature’s judgment about how the variables of mitigation and aggravation should be applied *310 to reach a proportionate sentence. Accordingly, the sentencing grids provide an objective source of data on sentencing. The statutory guidelines, and the judicial guidelines that preceded them, were designed to avoid individual and regional variation in sentencing. Hence, using the grid as a reference point to assess and anchor a departure is an exercise well-designed to promote uniformity.

 A departure cannot be justified on the sole basis that a crime is heinous. All criminal-sexual-conduct cases involving young children are heinous. Certainly the Legislature did not overlook this basic fact when establishing sentencing guidelines for these crimes.

 Babcock, 469 Mich at 260 n 14.

 Id. at 259 n 13.

 Id. at 260.

 See former MCL 769.33(1)(e)(iv), as added by 1994 PA 445. This provision was the part of the Code of Criminal Procedure that created the Sentencing Commission. The Legislature repealed the provisions in the code pertaining to the commission, including MCL 769.33(1)(e)(iv), after it enacted the sentencing guidelines. See 2002 PA 31. But the fact that it repealed the provision as part of the elimination of the Sentencing Commission does not mean that the Legislature abandoned its goal of uniformity in sentencing. Rather, it represents the fact that the Legislature concluded that the Sentencing Commission had done all that it could to further that goal.

 MCL 769.34(2).

 See MCL 769.34(3); Babcock, 469 Mich at 259-260.

 Justice Corrigan is mistaken when she opines that, by requiring courts to justify the particular departure, we read into the statute something that is not there. The Legislature has required the trial court to state a substantial and compelling reason justifying the departure. MCL 769.34(3). Our opinion today merely provides guidance to trial courts on how they may formulate and articulate that justification. It is, *314 in fact, our duty to give guidance to the bench and bar in such matters.

 However, appellate courts may not review the record to search for reasons to uphold a sentence that the trial court failed to justify. Babcock, 469 Mich at 258-259.

 See former MCL 769.33(1)(e)(iv), as added by 1994 PA 445. Justice Corrigan’s conclusion that the Legislature desired that a less stringent standard of uniformity pertain to departure sentences, post at 338, is incorrect. The Legislature permitted departures with the understanding that the guidelines could not account for all conceivable scenarios. However, that fact does not alter the overarching goal of uniformity in all sentencing. Rather, it constitutes the Legislature’s recognition that uniformity can be advanced only if departures from the guidelines are limited to cases involving unusual circumstances.
*315 With respect to departures, we must determine whether the trial court abused its discretion in imposing the sentence by weighing whether the reasons given justify the departure. We ask whether the court imposed a sentence that is not proportionate to the offense and the offender and thereby abused its discretion. We would be derelict in our duly to advance the Legislature’s goal of uniform sentencing if we imposed a less stringent standard of review on sentences that are based on a departure.

 Gall v United States, 552 US_; 128 S Ct 586; 169 L Ed 2d 445 (2007).

 Id. at _; 128 S Ct at 591.

 Id. at _; 128 S Ct at 594-595.

 Id. at _; 128 S Ct at 595.

 Id. at _; 128 S Ct at 595.

 Id. at _; 128 S Ct at 594.

 People v Buehler, 477 Mich 18, 24; 727 NW2d 127 (2007).

 Babcock, 469 Mich at 257-258.

 Gall, 552 US at _; 128 S Ct at 591.

 Babcock, 469 Mich at 258-259.

 Post at 334 n 4.