# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 19, 2008

136238

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

JUSTIN LEE HOWARD,
        Defendant-Appellant.

SC: 136238
COA: 282577
Jackson CC: 06-003949-FC

_____/

On order of the Court, the application for leave to appeal the February 29, 2008 order of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we VACATE the sentence of the Jackson Circuit Court and REMAND this case to that court for resentencing. The trial judge failed to offer any valid explanation justifying why he chose to sentence the defendant to a term of life imprisonment. *People v Smith*, 482 Mich 292 (2008). On remand, the trial court shall articulate on the record why this level of departure is warranted or resentence the defendant either within the appropriate sentencing guidelines range or articulate on the record why a different level of departure is warranted.

We do not retain jurisdiction.

KELLY, J. (*concurring*).

I concur fully in the remand order. I write separately only to respond to concerns raised by Justice Corrigan in her dissenting statement.

First, I emphasize that resentencing is required here because, as the remand order states, the trial judge did not explain why he sentenced defendant to a term of life imprisonment. The sentence was handed down before this Court released *People v*

*Smith*;[1] therefore, the trial judge may not have thought it necessary to express why substantial and compelling reasons justified the departure he chose.[2]

I disagree with Justice Corrigan that the trial court cannot comply with *Smith*. First, Justice Corrigan ties many of her concerns to *Smith*'s suggestion that a trial court could compare its departure sentence "against the sentencing grid and anchor[] it in the sentencing guidelines." Justice Corrigan seizes on this language to argue that a sentencing court could "mathematically justify almost any conceivable sentence" when the only pertinent question is whether a substantial and compelling reason justifies the sentence imposed.[3]

*Smith*'s mention of the sentencing grid provides guidance for sentencing courts. It shows how reference to the grid may be helpful when explaining why a substantial and compelling reason justifies a particular departure sentence. I note also that *Smith* merely stated that "*[o]ne potential means* of offering such a justification is to place the specific facts of a defendant's crimes in the sentencing grid."[4] Later in the opinion, the Court noted that "a trial court that is contemplating a departure is not *required* to consider where a defendant's sentence falls in the sentencing range grid."[5] This guidance assists, rather than impedes, a sentencing court by showing one method of applying the requirements of *Smith* to a sentence. Also, it undercuts Justice Corrigan's implicit assumption that a reviewing court will uphold a sentence only if the sentencing judge refers to mathematical support for its departure sentence.

---

[1] *People v Smith*, 482 Mich 292 (2008).

[2] Justice Corrigan "cannot imagine" what more the trial judge could have done to comply with the requirements of *Smith* and "fear[s] that providing meaningful further articulation will be impossible in practice." But the trial judge has not yet had the opportunity to comply with *Smith*. I reiterate that "[a] sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear." *Id.* at 304.

[3] MCL 769.34(3).

[4] *Smith*, *supra* at 306 (emphasis added).

[5] *Id.* at 309. *Smith* also repeatedly rejected "mathematical certainty," "mathematical precision," or "a rigid mathematical formula" in determining sentences. See *id.* at 311, 315-316. Justice Corrigan complains that "[i]f a court cannot quantify the reasons for departure because they are not contemplated by the guidelines," the court will be unable to explain why the particular departure from the guidelines is justified. But *Smith* allows a sentencing court to use means to justify a departure sentence other than referencing the sentencing grid or making a quantifiable analysis. For example, "a comparison of a defendant's characteristics and those of a hypothetical defendant whose recommended sentence is comparable to the departure sentence is a valuable exercise." *Id.* at 310.

In this case, the sentencing judge referenced defendant's previous sexual assaults against this victim and against defendant's sister. Defendant's prior assault on his sister was part of the decision to score five points for prior record variable (PRV 5), raising defendant's guidelines range. Justice Corrigan opines hypothetically that a sentencing court could use the same prior crimes as the basis for a departure; she then notes that a sentencing court that does so would contravene the statutory language by counting those offenses twice in two mutually exclusive categories. Such a hypothetical situation is not now before the Court. Moreover, I believe that effective appellate review would correct any such abuse of discretion. By requiring judges to provide additional explanation for departure sentences, *Smith* provides more, not less, record information from which an appellate court can identify an abuse of discretion.

Second, Justice Corrigan recites the circumstances surrounding the charged offense in this case that the judge mentioned as a basis for departure at sentencing. She then concludes that using those facts to add a significant number of additional points to defendant's offense variable (OV) score is unhelpful. A mere 20 additional points would place defendant in OV level VI—the highest level on the grid. Such a score would set defendant's minimum sentence under the guidelines at 10½ to 17½ years. Therefore, Justice Corrigan reasons, the guidelines "do not directly contemplate a minimum sentence over 17 ½ years for this defendant, regardless of how many additional aggravating factors were present."

However, *Smith* explicitly stated that, if a defendant had an OV score above 100, "the court may render a proportionate sentence above the highest minimum for someone with a similar PRV score" because "the Legislature did not contemplate a defendant with such a high OV score, given that it used 100 OV points as the maximum for the grid."[6] Therefore, in this case, the trial judge's burden would be to explain why the aggravating factors justified a life sentence. I do not share Justice Corrigan's concerns that *Smith* effectively ties the hands of a sentencing judge who wishes to depart from the guidelines. Certainly, in this case, the sentencing judge has yet to even attempt to justify the extent of the departure.

Finally, Justice Corrigan provides a number of shocking details about the "cruelty" that defendant inflicted on the victim. I agree that the crime was very disturbing. However, I believe that her assertion that "a life sentence appears entirely appropriate in light of defendant's history and the circumstances of this crime" supports disagreement with *Smith*[7] more than her conclusion that the trial judge will be unable to conform to the requirements of *Smith*.

---

[6] *Id*. at 308-309.

[7] Justice Corrigan's dissent in *Smith* similarly discussed gruesome details of the crime and the harm suffered, including many particulars not cited by the trial court as a basis

I continue to believe that *Smith*'s interpretation that MCL 769.34(3) requires a sentencing judge to justify the basis for "the departure it made and not simply *any* departure it might have made"[8] is appropriate. Moreover, it is mandated by the language of the statute. Therefore, I concur in the Court's order remanding this case for resentencing in light of *Smith*.

WEAVER, J. (*dissenting*).

I would deny leave to appeal for the reasons set forth in my dissenting statement in *People v Smith*, 482 Mich 292, 325-329 (2008).

CORRIGAN, J. (*dissenting*).

I would grant leave in this case and in that of the codefendant, see *People v Kurtz,* 482 Mich ___ (Docket No. 136262, order entered December 19, 2008), to reconsider the burdensome requirements imposed on sentencing courts by *People v Smith*, 482 Mich 292 (2008). This child rape case demonstrates that *Smith* is unworkable. The trial judge adequately justified the life sentence he imposed. Most significantly, I cannot fathom how the trial court can comply with *Smith*. First, I cannot conceive of a way to justify the departure mathematically by reference to the sentencing guidelines where the defendants' rape of one defendant's disabled 11-year-old daughter was "off the charts" with regard to cruelty and where this defendant's prior assaults on young girls militated in favor of a term of life imprisonment. Second, in response to Justice Kelly's concurring statement, although *Smith* does not absolutely *require* a mathematical analysis, I cannot imagine what more the trial judge here could have done to otherwise comply with *Smith.*

The assaults in this case were against the 11-year-old daughter of defendant's girlfriend, who is the codefendant in the underlying case. The child normally lived with

---

for departure at sentencing. *Id.* at 317; *id.* at 339-345 (Corrigan, J., dissenting). The majority opinion in *Smith* agreed that the crime was "heinous," *id.* at 311, but also unequivocally stated: "A departure cannot be justified on the sole basis that a crime is heinous. All criminal-sexual-conduct cases involving young children are heinous." *Id.* at 311 n 42.

I note that this point is underscored by Justice Corrigan's response to this concurrence. She claims that "[r]emand for further articulation thus also wastes precious time and scarce resources." I can certainly appreciate her concerns about judicial economy. But I would rather allow the trial judge to attempt to correctly apply the law than deny leave to appeal solely because of hypothetical, and I believe unfounded, concerns about *Smith*.

[8] *Smith, supra* at 318 (emphasis in original).

her father and paternal grandmother during the week, but stayed with her mother and defendant on weekends. She is physically and mentally disabled as a result of cerebral palsy and epilepsy. One weekend, her mother invited defendant to have sex with the girl, as he had once before. Defendant admitted that he fondled the child's breasts and penetrated her vagina with his fingers and penis. The child asked him to stop while the codefendant mother facilitated the rape by holding her daughter's legs open and spitting on defendant's penis for lubrication. The defendants also used a cell phone to take sexually explicit pictures of the child.

When the defendant mother returned the child to her grandmother's home the next day, the mother attempted to conceal the rape by telling the grandmother that the child might "tell her a story." The mother stated that she and defendant were having sex on the floor next to the child's bed when the child awoke, witnessed them, and began to cry. Nonetheless, the grandmother took the child to the hospital after the child told her that defendant had "stuck" his penis "inside [her] crotch." The medical examination revealed that the child's vagina was bruised, torn, and bleeding. Defendant later told the police that he had raped the child on a prior occasion under similar circumstances.

The defendants' acts could have justified multiple convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (sexual penetration of a person under 13 years of age), and child sexually abusive activity, MCL 750.145c(2). For each defendant, the prosecutor agreed to dismiss a single count of child sexually abusive activity in return for the defendant's guilty plea to one count of CSC I.

The presentence investigation report states that defendant showed "no remorse or concern" for the victim but was "more angry that he was caught and punished." The investigation also revealed that defendant, who was an adult at the time of the instant crimes, had a record of juvenile offenses, including sexually assaulting his younger sister on three or four occasions. He admitted that his sister would tell him to stop and would sometimes cry. He had been placed on probation for the assaults, but had violated his probation several times, including by taking nude photos to school and pulling down the pants of two boys.

The maximum sentence for CSC I is life in prison. The legislative sentencing guidelines recommended a minimum sentence range for defendant of 108 to 180 months (9 to 15 years). The judge opined that the guidelines range was inadequate for several reasons and departed from it, as permitted by MCL 769.34(3), imposing a parolable life sentence. Addressing defendant, the judge stated:

> [T]he guidelines, in the Court's opinion, do not adequately reflect that you knew that the victim was an 11 year old girl with the mental capacity of a seven year old, in addition to having physical problems, having cerebral palsy and epilepsy. The guidelines do not, in the Court's

opinion, adequately consider that the child's mother had to hold the victim's legs open so that you could penetrate her with your penis.

The guidelines also do not adequately consider that you were also involved in the taking of sexual [sic] explicit pictures of the victim. Additionally, in the Court's opinion, the guidelines do not adequately reflect that this is your second sexually assaultive behavior on your part within a relatively short period of time and that you had previously had [sic] sexually assaulted your little sister about six years ago and received counseling thereafter, which apparently didn't do a whole lot of good.

The sentence of the Court, all that having been said, is that you spend the rest of your life in prison.

As in the case of the defendant mother, I believe the judge offered an adequate "substantial and compelling reason," MCL 769.34(3), to impose a life sentence under the circumstances of this case and where defendant is a repeat sex offender. Indeed, the judge offered several reasons for departure. Most significantly, I cannot see how the judge on remand could further explain the departure under *Smith*.

*Smith, supra* at 318, centrally suggests that a trial court should compare its departure sentence "against the sentencing grid and anchor[] it in the sentencing guidelines." Here defendant's five prior record variable (PRV) points and 80 offense variable (OV) points placed him in the B-V range for Class A offenses, calling for a minimum sentence of 108 to 180 months. MCL 777.62. Yet, first, defendant's record revealed a pattern of sexual assaults that were not accounted for, including several against his sister and a prior assault on the current victim. Defendant's lack of reform and likelihood of reoffending is highly relevant to an appropriate sentence. One could argue under *Smith* that, if defendant had been convicted as an adult of each sexual assault he admitted committing, his record would reflect three or more prior high severity felonies justifying a score of at least 75 points under PRV 1. MCL 777.50. This alone would place him in the F-V range, which explicitly allows a minimum sentence of life in prison. But I think that we thwart the guidelines if we effectively allow courts to score additional points for nonexistent offenses and particularly for offenses that explicitly justify lower scores under other variables. Here, for example, defendant's prior sexual assaults of his sister were subsumed into a single juvenile assault adjudication that was scored under PRV 5. The assault adjudication and a second juvenile adjudication for retail fraud together resulted in a five-point score for PRV 5. Thus, if we hypothetically count the sexual assaults of his sister as felonies for purposes of a departure rationale, we contravene the statutory language and effectively count the assaults twice in two mutually exclusive categories. Significantly, I suspect that a court could mathematically justify almost any conceivable sentence in this way by extending or hypothetically rescoring the guidelines to explain a departure. It is in part for this reason that I find *Smith*

unworkable. To illustrate, here the substantial and compelling nature of defendant's prior crimes lies in their character as a pattern of admitted sexual assaults on young, unwilling girls. Their nature supports a lengthy prison sentence for the same reasons such a sentence is explicitly called for by the guidelines when an offender is convicted of multiple prior felonious sexual assaults. But the prior crimes arguably would *not* similarly justify a life sentence if they had been mere uncharged acts akin to *unrelated* felonies such as drug offenses or crimes against property. Yet, arguably, a sentencing judge could "count" such hypothetical felonies in the same way I "counted" the prior sexual assaults here in an attempt to justify a life sentence.

The only pertinent question under MCL 769.34(3) is whether a "substantial and compelling reason" justifies the sentence imposed—not whether a court can hypothesize mathematical support for its departure. And I would argue that the Legislature's actual formulation has a well-supported rationale. Here, the substantial and compelling reason to depart was defendant's unremitting sexual assaults on young girls, for which he apparently showed no remorse or reform despite prior punishment. In citing this reason, the trial judge offered an objective and verifiable fact that "keenly" or "irresistibly" grabs our attention and clearly is of "considerable worth in deciding a sentence." *People v Babcock,* 469 Mich 247, 257 (2003) (citation and quotation marks omitted). The judge thus *meaningfully* fulfilled his duty to "consider whether [his] sentence is proportionate to the seriousness of the defendant's conduct and his criminal history . . . ." *Id.* at 264. It would have been considerably less meaningful—and arguably *unlawful*—if he had concocted a guidelines calculation providing for a life sentence by effectively scoring variables that, by their terms, were not supported by the record.

Second, the judge cited defendant's exploitation of a disabled child and stressed that the rape required the mother to hold the child's legs open. Defendant's 80-point OV score included 10 points for OV 10 as is appropriate when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship or the offender abused his or her authority status." MCL 777.40(1)(b). But, here, defendant exploited the victim's physical disability, mental disability, youth *and* a domestic relationship. Should we multiply 10 points by these four attributes? A 40-point score for OV 10 would place defendant in the B-VI range, which calls for a minimum sentence of 126 to 210 months (10 ½ to 17 ½ years). Defendant also received the maximum 10-point score for OV 4 (psychological injury requiring treatment). In light of this rape of a child by her own mother and a live-in boyfriend, which required physical manipulation of the child because of her cerebral palsy, should the score for psychological injury be doubled? Tripled? Either way it matters not because the 30 additional points "under" OV 10 already would have placed defendant in the highest OV range—level VI on the grid. Thus, the guidelines do not directly contemplate a minimum sentence over 17 ½ years for this defendant, regardless of how many additional aggravating factors were present.

As I observed in my dissent in *Smith*, the very fact that the Legislature allows sentencing judges to depart from the guidelines shows that the guidelines are incapable of taking some factors into account. The Legislature thus expressly relies on a judge's ability to weigh such circumstances.

> [D]eparture sentences should by definition be governed by a different standard than sentences within the guidelines range. By choosing to permit judges to "depart" from the guidelines range for unusual offenses, the Legislature contemplated a less stringent standard of uniformity for unusual offenses, which should because of their nature be treated differently. Departure sentences generally involve less quantifiable facts that are not adequately covered by the normative guidelines. [*Smith, supra* at 338 (Corrigan, J., dissenting).]

Finally, as Justice Kelly observes, under *Smith* a sentencing court nonetheless "is not *required* to consider where a defendant's sentence falls in the sentencing grid." *Smith, supra* at 309. Rather, *Smith* permits the court to "render a proportionate sentence above the highest minimum for someone with a similar PRV score" because "the Legislature did not contemplate a defendant with such a high OV score, given that it used 100 OV points as the maximum for the grid." *Smith, supra* at 308-309. Justice Kelly thus concludes: "Therefore, in this case, the trial judge's burden would be to explain why the aggravating factors justified a life sentence." *Ante* at 3. Her conclusion exemplifies the central problem with *Smith* as applied: If a court cannot quantify the reasons for departure because they are not contemplated by the guidelines, what more can a court do to "explain why" the reasons for departure justify the sentence imposed? Here, what more could the court have done to justify a life sentence after recounting the circumstances of the crime, noting defendant's past sexual assaults, and recognizing that defendant failed to reform despite prior punishment and counseling? In cases such as this one, I fear that providing meaningful further articulation will be impossible in practice.

In sum, I think that the trial judge fully complied with MCL 769.34(3) in this case and that a remand for further articulation under *Smith* imposes an unnecessary and potentially impossible task. Significantly, although a life sentence appears entirely appropriate in light of defendant's history and the circumstances of this crime, I am not convinced that the trial judge could ever impose a life sentence while conforming to the *Smith* requirements. Remand for further articulation thus also wastes precious time and scarce resources. For these reasons, I would grant leave to appeal so as to reconsider *Smith*.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 19, 2008

Clerk