# Order

Michigan Supreme Court
Lansing, Michigan

December 19, 2008

136262

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

APRIL MARIE KURTZ,
      Defendant-Appellant.

SC: 136262
COA: 283580
Jackson CC: 06-003948-FC

_____/

On order of the Court, the application for leave to appeal the March 19, 2008 order of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we VACATE the sentence of the Jackson Circuit Court and REMAND this case to that court for resentencing. The trial judge failed to offer any valid explanation justifying why he chose to sentence the defendant to a term of life imprisonment. *People v Smith*, 482 Mich 292 (2008). On remand, the trial court shall articulate on the record why this level of departure is warranted or resentence the defendant either within the appropriate sentencing guidelines range or articulate on the record why a different level of departure is warranted.

We do not retain jurisdiction.

KELLY, J. (*concurring*).

I concur fully in the remand order. I write separately only to respond to concerns raised by Justice Corrigan in her dissenting statement.

First, I emphasize that resentencing is required here because, as the order states, "[t]he trial judge failed to offer any valid explanation justifying why he chose to sentence the defendant to a term of life imprisonment." The sentence in this case was handed down before the Court released its opinion in *Smith*;[1] therefore, the trial judge may not have thought it necessary to express why the particular departure he chose was justified

---

[1] *People v Smith*, 482 Mich 292 (2008).

by substantial and compelling reasons.[2]  Our order expresses no opinion on the validity of the reasons the trial judge gave for departing from the guidelines.

Given the circumstances, I believe that there is an inadequate basis to assert, as Justice Corrigan does, that the trial judge could never impose a life sentence while conforming to the *Smith* requirements.  Justice Corrigan ties many of her concerns to *Smith*'s suggestion that a trial court could compare its departure sentence "against the sentencing grid and anchor[] it in the sentencing guidelines."[3]  She notes the trial judge's reference at sentencing to the nature of the crime and the damage caused to defendant's child as substantial and compelling reasons to depart.  But Justice Corrigan fails to point to anything in the record indicating why the sentencing judge believed that a life sentence was appropriate.  *Smith* requires that the trial judge explain why a lesser departure would be disproportionate to the defendant's criminal history and the seriousness of defendant's conduct.

In this case, Justice Corrigan recites the facts surrounding the charged offense that the trial judge mentioned as a basis for departure.  She then concludes that using those facts to add a significant number of additional points to defendant's offense variable (OV) score is unhelpful.  She states that a mere 10 additional points would place defendant in OV level VI—the highest level on the grid.  Such a score would set defendant's minimum sentence under the guidelines at 11¼ to 18¾ years.  Therefore, she reasons, "it is essentially impossible to anchor a departure in the guidelines based on the degree to which OV 10 failed to adequately contemplate the circumstances of the crime."

To the contrary, *Smith* explicitly stated that, if a defendant has an OV score above 100, "the court may render a proportionate sentence above the highest minimum for someone with a similar PRV score" because "the Legislature did not contemplate a defendant with such a high OV score, given that it used 100 OV points as the maximum for the grid."[4]  Therefore, in this case, the trial judge's burden is to explain why the aggravating factors it identified justified a sentence of life in prison.  I do not share Justice Corrigan's concerns that *Smith* effectively ties the hands of a sentencing judge

---

[2] Justice Corrigan questions what more the trial judge could have done to comply with the requirements of *Smith* and "fear[s] that providing meaningful further articulation will be impossible in practice."  But, the court has not yet had the opportunity to comply with *Smith*.  I reiterate that "[a] sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear."  *Id.* at 304.

[3] *Id*. at 318.

[4] *Id.* at 308-309.

who wishes to depart from the guidelines. Certainly, in this case, the sentencing judge has yet to even attempt to justify the extent of the departure.[5]

I continue to believe that *Smith*'s interpretation of MCL 769.34(3), requiring a sentencing judge to justify the basis for "the departure it made and not simply *any* departure it might have made,"[6] is appropriate. Moreover, it is mandated by the language of the statute. Therefore, I concur in full in the Court's order remanding this case for resentencing in light of *Smith*.

WEAVER, J. (*dissenting*).

I would deny leave to appeal for the reasons set forth in my dissenting statement in *People v Smith*, 482 Mich 292, 325-329 (2008).

CORRIGAN, J. (*dissenting*).

I would grant leave in this case and in that of the codefendant, see *People v Howard*, 482 Mich ___ (Docket No. 136238, order entered December 19, 2008), to reconsider the burdensome requirements imposed upon sentencing courts by *People v Smith*, 482 Mich 292 (2008). For the reasons I explain in *Howard,* this child rape case demonstrates that *Smith* is unworkable.

Defendant is the mother of a disabled 11-year-old girl. As I fully explain in *Howard,* defendant encouraged and facilitated her codefendant boyfriend's rape of her daughter on at least two occasions. The codefendant proceeded to penetrate the girl's vagina with his fingers and penis only after defendant assured him that he would not get in trouble and the child would not tell anyone. When defendant returned the child to her grandmother's home the next day, defendant attempted to conceal the rape by telling the grandmother that the child might "tell her a story." Defendant admitted that she knew that her daughter had been injured because defendant saw bleeding between her daughter's legs.

The defendants' acts would have justified multiple convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (sexual penetration of a person under 13 years of age), and child sexually abusive activity, see MCL 750.145c(2). For

---

[5] Justice Corrigan's response to this concurrence claims that "[r]emand for further articulation thus also wastes precious time and scarce resources." I can certainly appreciate her concerns about judicial economy, but I would rather allow the trial judge to attempt to correctly apply the law than deny leave to appeal solely because of hypothetical, and I believe unfounded, concerns about *Smith*.

[6] *Smith, supra* at 318.

each defendant, the prosecutor agreed to dismiss a single count of child sexually abusive activity in return for the defendant's guilty plea to one count of CSC I.

The presentence investigation report states that defendant had 12 prior misdemeanors and was on probation at the time of the instant offense. Her prior convictions included contributing to the delinquency of a minor and domestic violence. The Department of Corrections recommended the maximum allowable term of incarceration for defendant, opining in part that the victim "will live the rest of her life knowing the one person who should have loved her more than life, [sic] betrayed her. It will remain to be seen if [the victim] will ever trust another person."

The maximum sentence for CSC I is life in prison. The legislative sentencing guidelines recommended a minimum sentence range for defendant of 126 to 210 months (10 ½ to 17 ½ years). The judge opined that the guidelines range was inadequate for several reasons and departed from it, as permitted by MCL 769.34(3), imposing a parolable life sentence. The judge opined:

> The court's deviating over the guidelines as in the Court's opinion the guidelines do not adequately consider that the child . . . was only 11 years of age at the time but had the mental capacity of a seven year old.

> The guidelines also do not adequately consider, in the Court's opinion, that the victim had cerebral palsy and that the defendant, because of the physical handicap, held her daughter's legs open to allow Mr. Howard [the codefendant] to achieve penetration and that this happened on two separate occasions.

> The guidelines also do not adequately consider that the defendant was taking sexually explicit photos of the victim for whatever reason, which is unclear to the Court. The guidelines also do not adequately consider, in the Court's opinion, the short and long-term psychological effects upon the child who, even now, misses the mother and wants to see her. This is simply abhorrent behavior.

> The sentence of the Court deviating over the guidelines, which the Court thinks is appropriate, is that the defendant spend the rest of her life in prison . . . .

As in the case of the codefendant, I think the judge offered an adequate "substantial and compelling reason," MCL 769.34(3), to impose a life sentence for this mother who solicited and participated in the abuse and exploitation of her disabled child on more than one occasion. Indeed, the judge offered several reasons to depart. Most significantly, I cannot see how the judge on remand could further explain the departure under *Smith*.

*Smith, supra* at 318, centrally suggests that a trial court should compare its departure sentence "against the sentencing grid and anchor[] it in the sentencing guidelines." Here defendant's 20 prior record variable (PRV) points and 90 offense variable (OV) points placed her in the C-V range for Class A offenses, calling for a minimum sentence of 126 to 210 months. MCL 777.62. This case differs from that of the codefendant because defendant did not have a history of sexual assault. But the trial judge reasonably points to the nature of the crime and to the damage caused to defendant's child as substantial and compelling reasons to depart. Defendant exploited her own disabled child while the child was in her care. Indeed, defendant offered the child to her boyfriend and encouraged and facilitated the rape. If these circumstances do not "keenly" and "irresistibly" grab our attention, *People v Babcock,* 469 Mich 247, 257 (2003) (citation and quotation marks omitted), I cannot imagine what would. By emphasizing the serious nature and results of this abuse, the judge meaningfully fulfilled his duty to "consider whether [the] sentence is proportionate to the seriousness of the defendant's conduct and [her] criminal history . . . ." *Id.* at 264.

Next, as in the codefendant's case, defendant received a 10-point score for OV 10 as is appropriate when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship or the offender abused his or her authority status." MCL 777.40(1)(b). But defendant exploited the victim's physical disability, mental disability, youth, domestic relationship and authority status *as the child's own mother* by offering up her child for rape. Is it enough to multiply 10 points by these five attributes? A 50-point score for OV 10 would give defendant a total of 130 OV points, but such a score would make little difference in her prescribed minimum sentence range; her 90-point OV score already placed her in the second highest OV category, so only 10 additional points places her in the highest OV category for 100 points or more. This would place defendant in the C-VI range, which calls for a minimum sentence of 135 to 225 months (11 ¼ to 18 ¾ years). Thus, it is essentially impossible to anchor a departure in the guidelines based on the degree to which OV 10 failed to adequately contemplate the circumstances of the crime. Similarly, defendant received the maximum 10-point score for OV 4 (psychological injury requiring treatment). But because the OV category maxes out, so to speak, if only 10 points are added to her 90-point score, it is impossible to calculate what sentence would be appropriate if both OV 10 and OV 4 could be scored at a number of points more applicable to this crime.

As I observed in my dissent in *Smith* and my statement in the codefendant's case, the very fact that the Legislature allows sentencing judges to depart from the guidelines shows that the guidelines are incapable of taking some factors into account. The Legislature thus expressly relies on a judge's ability to weigh such circumstances.

[D]eparture sentences should by definition be governed by a different standard than sentences within the guidelines range. By choosing to permit judges to "depart" from the guidelines range for unusual offenses, the Legislature contemplated a less stringent standard of uniformity for unusual offenses, which should because of their nature be treated differently. Departure sentences generally involve less quantifiable facts that are not adequately covered by the normative guidelines. [*Smith, supra* at 338 (Corrigan, J., dissenting).]

Finally, as Justice Kelly observes, under *Smith* a sentencing court nonetheless "is not *required* to consider where a defendant's sentence falls in the sentencing grid." *Smith, supra* at 309. Rather, *Smith* permits the court to "render a proportionate sentence above the highest minimum for someone with a similar PRV score" because "the Legislature did not contemplate a defendant with such a high OV score, given that it used 100 OV points as the maximum for the grid." *Smith, supra* at 308-309. Justice Kelly thus concludes: "Therefore, in this case, the trial judge's burden is to explain why the aggravating factors it identified justified a sentence of life in prison." *Ante* at 2. Her conclusion exemplifies the central problem with *Smith* as applied: If a court cannot quantify the reasons for departure because they are not contemplated by the guidelines, what more can a court do to "explain why" the reasons for departure justify the sentence imposed? Here, what more could the court have done to justify a life sentence after describing defendant's "abhorrent behavior" in offering up her own disabled daughter for rape? In cases such as this one, I fear that providing meaningful further articulation will be impossible in practice.

In sum, I think that the trial judge fully complied with MCL 769.34(3) in this case and a remand for further articulation under *Smith* imposes an unnecessary and potentially impossible task. Significantly, although a life sentence appears entirely appropriate in light of the circumstances of this crime and defendant's role as the victim's mother, I am not convinced that the trial judge could ever impose a life sentence while conforming to the *Smith* requirements. Remand for further articulation thus also wastes precious time and scarce resources. For these reasons, I would grant leave to appeal so as to reconsider *Smith.*



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 19, 2008

*Corbin R. Davis*

Clerk