# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

SHAWN LEE GATZKE,

      Defendant-Appellee.

UNPUBLISHED
December 1, 2015

No. 322501
Benzie Circuit Court
LC No. 13-002312-FH

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant pleaded guilty to one count of using a computer to commit a crime, MCL 752.796.[1] The trial court departed downward from the sentencing guidelines and sentenced defendant to 5 years of probation, with the first year to be served in the county jail. The prosecution sought leave to appeal, which we granted.[2] We remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

At the plea hearing, defendant admitted that he used a computer to view pictures of children performing sexual acts and paid someone in another country to take pictures of children performing particular sexual acts.[3] It is undisputed that defendant was on probation for possessing and distributing child sexually abusive material when he was caught with the materials giving rise to the conviction in this case.

---

[1] In exchange, 19 other counts were dismissed, and the prosecution agreed to dismiss a third habitual offender notice.

[2] *People v Gatzke*, unpublished order of the Court of Appeals, entered August 7, 2014 (Docket No. 322501).

[3] Defendant initially stated that he was not certain whether the photographs that he purchased were reproduced, or whether the individual receiving payment actually took the photographs. However, he later clarified that he asked the individual to take pictures of young children performing sexual acts with his or her cell phone and send the photographs to defendant.

-1-

Before sentencing, the trial court received a report from a psychological evaluation of defendant that occurred after he entered his guilty plea, as well as reports from two previous psychological evaluations. The most recent evaluation confirmed, among other things, that defendant suffers from severe post-traumatic stress disorder ("PTSD"), alcohol dependence, and sexual addiction. The report also noted that defendant's sexual addiction appears to be related to the poor coping strategies utilized by defendant to manage his PTSD.

At sentencing, the trial court acknowledged that this was defendant's second offense involving child sexually abusive material, and that defendant had an opportunity for rehabilitation during his probation sentence for the previous offense. Likewise, the trial court recognized that this circumstance would normally preclude a more lenient sentence. Nevertheless, the trial court significantly departed from the minimum range calculated under the sentencing guidelines, which was 84 to 140 months' imprisonment, and sentenced defendant to five years' probation, with the first year in the county jail. The conditions of defendant's probation include: (1) taking advantage of services offered by the United States Department of Veterans Affairs ("VA") (2) successfully completing the VA program prescribed following a VA assessment, and (3) participating in a substance abuse evaluation.

The trial court judge provided the following reasons for the downward departure: (1) the judge's belief that PTSD is not well understood; (2) his belief that defendant's PTSD prevented him from recognizing his problems and seeking out treatment, such that defendant is "numb" due to his PTSD and engaged in this criminal activity as a result; (3) the judge's experiences with his own great uncle, who suffered from PTSD following World War I; (4) the judge's belief that "defendant engaged in these kind of viewing activities essentially to anesthetize himself from facing his ongoing problems"; (5) the fact that "it wouldn't surprise [the judge] if [d]efendant's viewing activities started when he was in the army" and "if this is what soldiers did in Afghanistan with their time off if they had computer access"; (6) his belief that defendant would not have viewed this material if he had not served in Afghanistan, although "[he] suppose[d] there's no way of proving it"; and (7) the judge's knowledge of the types of things that military personnel saw and experienced in Afghanistan based on materials he has read.

## II. REVIEWING A DEFENDANT'S DEPARTURE SENTENCE FOR REASONABLENESS

On appeal, the prosecution argues that the trial court abused its discretion when it departed from the sentencing guidelines because it failed to justify its departure with a sufficiently substantial and compelling reason that was based on objective and verifiable facts.[4]

---

[4] The prosecution also argues that the trial court erroneously failed to justify the extent of its departure from the sentencing guidelines. However, the gravamen of the prosecution's argument is not that the trial court failed to adequately explain the extent of its departure, but that the trial court failed to provide adequate reasons for the extent of the departure because it "ignored numerous factors of greater importance" and "focused solely on [defendant's] military service and PTSD and the assumption that it led [defendant] to possess and order the production of . . . child pornography." As such, we understand this argument to be an extension of the

See *People v Smith*, 482 Mich 292, 299; 754 NW2d 284 (2008). However, under the significant modifications to the Michigan sentencing scheme implemented under *People v Lockridge*, 498 Mich 358, 364-365, 391-392; ___ NW2d ___ (2015), a trial court is no longer required to provide a substantial and compelling reason for a departure sentence. This Court summarized the changes as follows:

> [The *Lockridge* Court] held that our sentencing scheme "violates the Sixth Amendment right to a jury trial because it requires 'judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*.' " Our Supreme Court "concluded that the appropriate remedy was to render Michigan's sentencing guidelines merely advisory." Accordingly, our Supreme Court "sever[ed] MCL 769.34(2) to the extent that it is mandatory *and [struck] down the requirement of a 'substantial and compelling reason' to depart from the guidelines range in MCL 769.34(3)." "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness."* However, sentencing courts must "continue to consult the applicable guidelines range and take it into account when imposing a sentence." [*People v Terrell*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321573); slip op at 6-7 (footnotes omitted; emphasis added).]

Accordingly, a claim of error based on a trial court's failure to provide substantial and compelling reasons for a departure sentence is no longer viable under Michigan law. Instead, after *Lockridge*, the proper inquiry is whether a defendant's departure sentence is reasonable. *Lockridge*, 498 Mich at 365, 391-392; *Terrell*, ___ Mich App at ___, slip op at 7.

As this Court recently recognized, the *Lockridge* Court did not set forth the appropriate procedure for reviewing a sentence for reasonableness. *People v Steanhouse*, ___ Mich App ___ ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 21. Thus, the *Steanhouse* Court adopted the "principle of proportionality" that was previously in place under *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), "hold[ing] that a sentence that fulfills the principle of proportionality under *Milbourn* and its progeny constitutes a reasonable sentence under *Lockridge*." *Steanhouse*, ___ Mich App at ___; slip op at 23-24. In addition, the panel provided the following procedure for reviewing a defendant's departure sentence:

> Given that *Lockridge* overturned the substantial and compelling reason standard, *Lockridge*, ___ Mich at ___; slip op at 29, which was in place at the time of defendant's sentencing, and given our conclusion that the principle of proportionality established under *Milbourn* and its progeny is now the appropriate standard by which a defendant's sentence should be reviewed, we also find that the procedure articulated in *Lockridge*, and modeled on that adopted in *United States v Crosby*, 397 F3d 103 (CA 2, 2005), should apply here. *Lockridge*, ___

---

prosecution's claim that the trial court failed to base its departure on sufficiently substantial and compelling reasons.

Mich at ___; slip op at 33-36. As recently stated by this Court in *People v Stokes*, ___ Mich App ___, ___; ___NW2d ___ (2015); slip op at 11, "the purpose of a *Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence, so that it may be determined whether any prejudice resulted from the error." While the *Lockridge* Court did not explicitly hold that the *Crosby* procedure applies under the circumstances of this case, we conclude this is the proper remedy where, as here, the trial court was unaware of and not expressly bound by a reasonableness standard rooted in the *Milbourn* principle of proportionality at the time of sentencing.

Under the *Crosby* procedure, which "offers a measure of protection to a defendant[,]" "a defendant is provided with an opportunity 'to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought.' " *Stokes*, ___ Mich App at ___; slip op at 11-12, quoting *Lockridge*, ___ Mich at___; slip op at 35. Given the possibility that defendant could receive a more severe sentence, defendant should be provided the opportunity to avoid resentencing if that is his desire. *Stokes*, ___ Mich App at ___; slip op at 12. Accordingly, we remand the matter to the trial court to follow the *Crosby* procedure outlined in *Lockridge*. Defendant "may elect to forego resentencing by providing the trial court with prompt notice of his intention to do so. If 'notification is not received in a timely manner,' the trial court shall continue with the *Crosby* remand procedure as explained in *Lockridge*." *Stokes*, ___ Mich App at ___; slip op at 12, quoting *Lockridge*, ___ Mich at ___; slip op at 35-36. [*Steanhouse*, ___ Mich App at ___; slip op at 25.]

## III. APPLICATION

Here, as in *Steanhouse*, the trial court was neither aware of, nor expressly bound by, a reasonableness standard grounded in the *Milbourn* principle of proportionality when it imposed defendant's sentence. As such, under *Steanhouse*, remand is necessary so that the trial court may implement the *Crosby* remand procedure as articulated in *Lockridge*. See *Steanhouse*, ___ Mich App at ___; slip op at 25. However, unlike in *Steanhouse*, the prosecution is the party challenging on appeal the trial court's departure from the sentencing guidelines. Accordingly, we conclude that it is the prosecution that may elect to forgo resentencing by promptly notifying the trial court of its intent to do so. See *Steanhouse*, ___ Mich App at ___; slip op at 25; see also *Lockridge*, 498 Mich at 398. If the trial court does not receive such notice from the prosecution in a timely manner, the "court shall continue with the *Crosby* remand procedure as explained in *Lockridge*." *Steanhouse*, ___ Mich App at ___; slip op at 25 (quotation marks and citation omitted).[5]

---

[5] While we are required to follow *Steanhouse*, this is an issue that requires a legislative fix. Unlike the reasonableness standard articulated in 18 USC 3553(a), which applies to the federal sentencing guidelines, and which the federal courts could fall back on after the United States Supreme Court's decision in *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d

## IV. CONCLUSION

For the reasons stated *supra*, we remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

---

621 (2005), there is no parallel state statute that defines "reasonableness" for purposes of Michigan's sentencing guidelines. It is up to the Legislature to create one; it is not in the province of this Court to do so.