# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JERMAINE TERRELL JACKSON,

Defendant-Appellant.

UNPUBLISHED
December 12, 2017

No. 333722
Monroe Circuit Court
LC No. 15-242179-FC

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

A jury acquitted defendant of assault with intent to murder but convicted him of the lesser included offense of assault with intent to do great bodily harm less than murder, MCL 750.84, for shooting Demetrius Davis at a party in Bedford Township. The trial court departed upward from the sentencing guidelines and sentenced defendant to 72 to 120 months' imprisonment. The court failed to adequately support this departure. Accordingly, we vacate defendant's sentence and remand for resentencing.

## I. BACKGROUND

In July 2015, defendant travelled from his Toledo home to Bedford Township with a group of three friends to attend the birthday party of Demetrius Davis. Defendant bought and used marijuana at the party. He also consumed a large amount of alcohol. Defendant's friends testified that he then became combative, tried starting fights with several individuals, and acted paranoid.

Defendant claimed that about a week before the party, he was attacked in his neighborhood. As a result, he began carrying a weapon for protection. When the group arrived at the party, defendant left his gun in his friend's car. After becoming intoxicated, defendant was nervous and asked his friend to let him into the car to get his gun. Defendant's friend, concerned about defendant's behavior, had hidden the gun. As defendant became more belligerent and combative, the friend gave up, handed the gun to defendant and left the party.

Defendant's ex-girlfriend was in attendance at the party and was with defendant after he took possession of his gun. Defendant started making threatening comments about using the gun. The ex-girlfriend warned everyone to avoid defendant. Davis decided to ask defendant to

-1-

leave his party.  Five to six other men followed him outside.  The details of Davis's confrontation with defendant vary from witness to witness, but the broad strokes are mostly the same: (1) Davis approached defendant and asked him to leave; (2) defendant took out his gun and fired, (3) Davis was shot twice, and (3) defendant fled the scene on foot.  Defendant claimed that the "mob" threatened him and he shot in self-defense.  No other witness corroborated this story.  Defendant's shots hit only Davis; he was hospitalized for 11 days, required surgery, and still has not gained full use of his injured arm.

## II. SENTENCING

After scoring defendant's offense and prior record variables, his minimum sentencing guidelines range was calculated at 34 to 67 months.  The trial court deemed this sentence inadequate and departed upward by five months, sentencing defendant to 72 to 120 months' imprisonment.  The trial court justified its decision as follows:

> I have gone through the report several times, I've gone through the guideline scorings several times, and now at least by court order, we are solidified on the guideline scorings of 34 to 67 months on the minimum.  There is a maximum penalty in this case of 120 months, which is tantamount to [10] years, for lack of better word.

> The Court also sat through the trial testimony.  I agree largely [with] a lot of what the prosecutor says[.]  [I]t could be so simple for me just to accept the [prosecutor's] argument and go along with 80 months in this case.  I agree too, and we all know it, guideline scoring is no longer mandatory, they are advisory, the Court must take these into account when fashioning its sentences, and I have done so.

> I agree that this type of offense is beyond the pale of the ordinary criminal offense that comes here.  This is a very troubling offense, to commit the crime of Assault With Intent to do Great Bodily Harm Less than Murder and the Court is cognizance [sic] of the fact that this is what the jury came back with, but the original charge was Assault With Intent to Murder.  And what the Court heard through the testimony, and I understand it, [defense counsel], this was your argument that your client came from, and I think your words were, a territory not here in Michigan but what you referred to as the hood, and that you needed firearms and this and that for protection perhaps for all the violence that went on where he came from.  But he came to this community and he's going to . . . a party, which is what the testimony was.  And what I am so troubled with is why this defendant before he even ingested whatever he ingested as the party, why he brought a gun in the first place.  It is beyond my comprehension why he did that in the first place.

> He came to this party with the full intent to bring that firearm and to do something with it, in my opinion.  [I] just still don't understand it, even his friends tried to get this firearm away from him.  There was nothing really going on at the party before he went outside and started acting the way he did to where a firearm

became I guess material in this case. And then it was his actions that brought this about. That's what does not [sit] well with this Court.

And, you know, the jury obviously found basically the same thing. But I just still can't figure out why he brought it in the first place, he had no reason to believe that anything was going to happen at this party, unless it was to deal with the situation with his former girlfriend.

So, I've taken all of this into account, all of the testimony, all of the findings of the jury, I find this to be a fair and proportionate sentence, it is for the protection of society. This is a more than reasonable sentence. It is an upward departure from the guidelines, which I think is proper in this case even though they are no longer mandatory, they are advisory, but it's not to the level of what the prosecutor has sought.

. . . I am going to sentence [defendant] to serve 72 months to 120 months in state prison, Michigan Department of Corrections.

Defendant challenges his departure sentence.

## III. LEGAL PRINCIPLES

We review departure sentences for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; ___ NW2d ___ (2017). In determining whether a trial court abused its discretion by unreasonably departing from the sentencing guidelines, we review whether the court conformed to the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *Steanhouse*, 500 Mich at 476-477.

The principle of proportionality is one in which

> "a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender."

Under this principle, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines recommended range.' " [*People v Dixon-Bey*, ___ Mich App ___; ___ NW2d ___ (Docket No. 331499, issued September 26, 2017), slip op at 16, quoting *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 651, 661.]

In *Milbourn*, 435 Mich at 635, the Supreme Court held that the sentencing guidelines were designed with the "principle of proportionality" in mind, to impose punishment "relative [to the] seriousness and severity of individual criminal offenses." The Legislature already considered the seriousness of the various criminal offenses and the danger imposed by recidivism in creating the guidelines and "intended more serious commissions of a given crime by persons with a history of criminal behavior to receive harsher sentences than relatively less serious breaches of the same penal statute by first-time offenders." *Id.* Judges veering from the statutory guidelines must exercise their discretion "according to the same principle of proportionality," *id.* at 635-636, and impose a sentence that is proportionate to the seriousness of the particular offense and the particular offender. *Steanhouse*, 500 Mich at 474. To this end, trial courts may depart from the guidelines "when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Milbourn*, 435 Mich at 657. The guidelines are "a useful tool," but departure sentences are "appropriate where the guidelines *do not adequately account for* important factors legitimately considered at sentencing." *Id.* at 657-658 (emphasis added).

In application, the *Milbourn* Court found that "departures from the guidelines, unsupported by reasons not adequately reflected in the guidelines variables, should . . . alert the appellate court to the possibility of a misclassification of the seriousness of a given crime by a given offender and a misuse of the . . . sentencing scheme." *Id.* at 659. The Court explained:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances *that are not adequately embodied within the variables used to score the guidelines.* A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. . . . [*Milbourn*, 435 Mich at 659-660 (emphasis added).]

In *People v Smith*, 482 Mich 292; 754 NW2d 284 (2008), the Supreme Court described a practical application of the principle of proportionality. The *Smith* Court required a trial court to rationalize and articulate why *the* specific departure sentence imposed was proportionate to the offense and the offender. *Id.* The Court explained that a departure cannot be based "on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been *given inadequate or disproportionate weight*." *Id.* at 300, quoting MCL 769.34(3)(b) (emphasis added).

Although dealing with statutory language in MCL 769.34 that is no longer applicable due to *Lockridge*, 498 Mich at 391 (regarding substitution of the words "may" for "shall"), the *Smith* Court's methodology to effectuate the principle of proportionality remains relevant. Addressing appellate review of departure sentences, the *Smith* Court stated:

Appellate courts are obliged to review the trial court's determination that a . . . reason exists for departure. Accordingly, the trial court's justification "must be sufficient to allow for effective appellate review." In [*People v Babcock*, 469 Mich 247, 258-259; 666 NW2d 231 (2003)], this Court explained that an appellate court cannot conclude that a particular . . . reason for departure existed when the trial court failed to articulate that reason. Similarly, if it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified. A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear. When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been. [*Smith*, 482 Mich at 304 (citations omitted).]

Also identified as assisting appellate review of the proportionality of a departure sentence is "when a court explains the similarity between the facts justifying the departure and the facts describing a crime meriting the same sentence under the guidelines. A comparison of a defendant's characteristics and those of a hypothetical defendant whose recommended sentence is comparable to the departure sentence is a valuable exercise." *Id.* at 310. In this vein, a "potential means of offering . . . a justification [for a departure] is to place the specific facts of a defendant's crimes in the sentencing grid." *Id.* at 306. The Court reasoned that "reference to the grid can be helpful, because it provides objective factual guideposts that can assist sentencing courts to ensure that the offenders with similar offense and offender characteristics receive substantially similar sentences," *id.* at 309 (quotation marks and citation omitted), and thus "minimize idiosyncrasies" in sentencing. *Id.* at 311. However, courts are not required to "sentence defendants with mathematical certainty" and "precise words [are not] necessary . . . to justify a particular departure." *Id.*

A common thread in the line of sentencing cases both before and after *Lockridge* is that a court may not depart from the sentencing guidelines based on factors already taken into account under the guidelines except under specific circumstances. In determining whether the chosen departure sentence is more proportionate than a guidelines sentence, relevant considerations include: "(1) whether the guidelines accurately reflect the seriousness of the crime, . . . (2) factors not considered by the guidelines, . . . and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, ___ Mich App at ___; slip op at 18-19 (citations omitted).

IV. ANALYSIS

The trial court's reasons for departing from defendant's minimum sentencing guidelines range boil down to the following: (1) defendant committed a serious criminal offense, assault with intent to do great bodily harm less than murder (2) by bringing a gun to a party (3) with the intent to use the gun at the party. The court also took little stock in defendant's claim that he needed the gun for protection, given the relative safety of Bedford Township compared to defendant's home neighborhood. The fundamental problem with the court's reasoning is that its justifications for the departure are entirely encapsulated by the guidelines, and it did not explain why the guidelines inadequately accounted for defendant's conduct.

The guidelines as a whole already take into account the seriousness of the crime. The guidelines classify the type of crime by its maximum punishment. Assault with intent to do great bodily harm is a class D offense with a default maximum statutory punishment of 10 years' imprisonment. MCL 777.16d. Once classified, the guidelines provide a specific sentencing grid for that class of crime. See MCL 777.65 (providing the minimum sentencing range for class D offenses). Thus, the structure of the guidelines already takes into account the seriousness of the crime. See *Smith*, 482 Mich at 311 n 42 (explaining that a departure cannot be based solely on the heinousness of a particular type of crime because "the Legislature did not overlook this basic fact when establishing sentencing guidelines for [those] crimes").

Defendant's use of a firearm was taken into account in scoring OVs 1 and 2. MCL 777.31(1)(a) provides for the assessment of 25 points when a defendant discharges a firearm at a person. OV 2 gauges to the "lethal potential" of the weapon used. As defendant fired a pistol, the court assessed 5 points pursuant to MCL 777.32(1)(d). The Legislature clearly laid out a variety of situations involving the use of weapons and categorized them according to their severity. And the trial court did not explain why OVs 1 and 2 were inadequate to cover defendant's decision to bring a firearm to the party and then to use it.

The seriousness of a particular crime is taken into account in OVs 3 and 4, which measure the level of harm experienced by the victim. Points are assessed for OV 3 when a victim is physically injured. Davis was hit by two bullets, one near his hip and one in his arm, and at least one of the bullets fragmented within his body. As a result, Davis was hospitalized for 11 days, during which he required surgery and chest tubes. Davis also has yet to regain full use of the hand connected to his wounded arm. Defendant was assessed 25 points, the maximum number of points applicable for the infliction of nonlethal injuries. MCL 777.33(1)(c). OV 4 measures the "psychological injury to a victim." Because defendant caused Davis significant physical harm, the trial court found it likely that Davis suffered the requisite psychological harm to trigger OV 4 and assessed the maximum number of points allowable—10. MCL 777.34(1)(a).[1] Again, the trial court made no consideration of whether OVs 3 and 4 adequately measured the seriousness of defendant's offense.

Similarly, a defendant is assessed higher points under OV 9 when a larger number of victims are placed in danger. This takes into account both the seriousness of the crime and the impact of defendant's decision to bring a gun to a party. MCL 777.39(1)(c) provides for the assessment of 10 points when the defendant places two to nine victims "in danger of physical injury or death." Defendant earned this score by shooting into the "mob," consisting of approximately seven people. Because OV 9 covers situations where multiple individuals are exposed to danger, it would cover crimes that take place at a party. Once again, the court failed to explain how OV 9 did not adequately cover this situation.

---

[1] We question the validity of the court's score for OV 4 as there is no record evidence that Davis actually suffered a psychological injury requiring professional treatment. See MCL 777.34(2). Defendant has not challenged this score, however.

OV 6, which is scored for the intent to kill or injure another, would cover defendant's decision to bring a gun to a party with the intent to use it. Under OV 6, a trial court may assess points for the "offender's intent to kill or injure another individual." MCL 777.36(1). However, the trial court could not score OV 6 because points are only assessed for crimes involving homicide or intent to commit homicide. MCL 777.22(1) (directing the trial court to only score OV 6 for "homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder"); MCL 777.1(c) (defining "homicide" to mean "any crime in which the death of a human being is an element of that crime"). The Legislature thereby deemed the intent to injure less relevant where the defendant did not intend to cause death. The jury considered the evidence and acquitted defendant of the greater charge of assault with intent to murder. The trial court was required by the statute to score OV 6 consistent with the jury verdict "unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). As there is no record indication that the trial court had information beyond that provided to the jury, the court was required to score zero points. And the court made no reference to OV 6 when deciding to depart from the guidelines.

Ultimately, the seriousness of defendant's crime was taken into account in the structure of the legislative sentencing guidelines. The seriousness of this particular offense and the culpability of this particular offender were taken into account in several of the offense variables. The trial court made no reference to the variables when imposing an upward departure sentence and therefore did not meet its burden of explaining why the guidelines gave inadequate weight to the facts of this case. "[I]f it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified." *Smith*, 482 Mich at 304. Nor can this Court "supplement the trial court's reasoning where it failed to give an explanation." *Dixon-Bey*, ___ Mich App at ___; slip op at 21. We must therefore vacate defendant's departure sentence and remand for resentencing.[2]

We vacate defendant's sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

---

[2] Although not properly presented as a separate issue for review by this Court, defendant contends that the trial court improperly scored PRV 2. PRV 2 measures the number of prior low severity felonies a defendant has amassed. MCL 777.52. Defendant has no prior adult criminal record. Accordingly, the court should not have scored PRV 2. Defendant may raise this issue at resentencing for correction.