*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 20, 2022

Plaintiff-Appellee,

v

No. 354700
Ingham Circuit Court
LC No. 15-001126-FH

JACOB DANIEL MCKAY,

Defendant-Appellant.

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of three counts of second-degree child abuse, MCL 750.136b(3). On second remand, he was resentenced as an habitual offender, third offense, MCL 769.11, to 141 to 240 months' imprisonment. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant was convicted of three counts of second-degree child abuse for egregious conduct against the victims, his three stepchildren, JLB, JJB, and SLB, over a period of approximately 15 months. The abuse of the victims was extensive. As punishment, the victims were forced to touch their toes without bending their knees for long periods of time. The victims were also spanked with JJB being struck to the point where he could not sit down. The victims were "grounded" and confined to their rooms. Defendant would remove the doorknobs or block the doorways with furniture to prevent the victims from leaving. This caused the victims to defecate out the window or inside their rooms. When defendant realized that one of the victims had defecated, he covered her face with the feces. Additionally, defendant would force the victims to write thousands of sentences. Defendant corroborated significant portions of the victims' accounts in his interview with a detective. Additionally, defendant's biological children visited him and witnessed the abuse of the victims.

The trial court originally sentenced defendant as a third-offense habitual offender to serve 160 to 240 months' imprisonment. The 160-month minimum exceeded the minimum sentencing guidelines range of 43 to 129 months. We vacated defendant's sentences and remanded for resentencing, concluding that the trial court did not provide an adequate explanation to support its

departure from the guidelines range.[1] On remand, the trial court judge had retired, and the successor judge again sentenced defendant to serve 160 to 240 months' imprisonment. We vacated once more and remanded for resentencing before a different judge. We concluded that the resentencing judge committed an error of law by stating that the guidelines were no longer applicable and by failing to provide an adequate rationale for the extent of her departure sentence.[2] On second remand, the third judge resentenced defendant to serve 141 to 240 months' imprisonment. From this second resentencing hearing, defendant appeals.

## II. DEPARTURE SENTENCE

Defendant contends that the third judge's departure sentence was unreasonable and disproportionate and failed to consider defendant's traumatic childhood and the age of his prior convictions. We disagree.

The appellate court reviews the trial court's sentencing decision for an abuse of discretion. *People v Skinner*, 502 Mich 89, 131-132; 917 NW2d 292 (2018). "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). To determine reasonableness, we examine the case circumstances, the record, and the trial court's statements made during sentencing. *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). The reasonableness of a departure sentence is reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). An abuse of discretion occurs when the trial court's decision falls "outside the range of reasonable and principled outcomes." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017).

Although the application of the sentencing guidelines is no longer mandatory, they are nonetheless advisory. *Lockridge*, 498 Mich at 391. "Sentencing courts must, however, continue to consult the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 392. Further, the sentencing judge must justify the sentence imposed to aid appellate review. *Id*. A trial court's upward departure constitutes an abuse of discretion when it violates the principle of proportionality adopted in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *Steanhouse*, 500 Mich at 471. Under the principle of proportionality, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 475, quoting *Milbourn*, 435 Mich at 661.

The factors that the sentencing court may consider under the proportionality standard include, but are not limited to:

---

[1] *People v McKay*, unpublished per curiam opinion of the Court of Appeals, issued March 6, 2018 (Docket No. 335417), pp 5-6.

[2] *People v McKay*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2019 (Docket No. 345910), pp 4-6.

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Walden*, 319 Mich App at 352-353 (quotation marks and citations omitted).]

"Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality." *Milbourn*, 435 Mich at 660. In order to facilitate appellate review, the sentencing court must articulate "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008).

In this case, the third sentencing judge sentenced defendant to serve 141 to 240 months' imprisonment. This was a 12-month upward departure from the top end of the sentencing guidelines range, but 9 months less than the 150-month recommendation of the probation department. The sentencing judge determined that the guidelines, specifically the scoring of Offense Variables (OVs) 4, 7, and 10, did not adequately address the seriousness of this abuse and the injury to the victims.

We agree with the lower court's finding that the score for OV 4 failed to sufficiently capture the extent of the victims' psychological injuries. OV 4 is properly scored at 10 points for "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a); *People v White*, 501 Mich 160, 163; 905 NW2d 228 (2017). The maximum score for OV 4 is 10 points. MCL 777.34(1)(a).

At resentencing, the court explained:

[A score of 10 points for OV 4] doesn't capture the type of injury that according to this record occurred here, including resulting in two of the victims being institutionalized, including multiple attempts at suicide, including professionally evaluated increase in aggravation or additional symptomology of autism for the one victim who is on the autism spectrum[.]

* * *

So in this case . . . OV 4 does not fully take into consideration the psychological injury that these individuals, these children sustained. I mentioned some of it. I think the record supports that in addition to residential 24-hour care for two of them and the suicide . . . attempts, there is display of [post-traumatic stress disorder (PTSD)], paranoia, anxiety; things that were talked about in terms of what these kids are - - these children are exhibiting. There was reference to difficulty with normal self-care, things such as that, that I think it's - - the type of psychological injury that goes well beyond just the general trauma that occurs from a criminal act even some of the more heinous criminal acts that we see, the OV simply does not - - I think OV 4 simply does not fully take into account this particular set of facts.

The psychological consequences cited by the court constituted just a portion of the ample evidence that showed the severity of the victims' psychological injuries after the abuse. JLB frequently cut herself and twice attempted suicide. JJB had extreme mood swings, and he exhibited more pronounced symptoms of autism spectrum disorder. SLB was "depressed," "easily frightened," and had "lots of nightmares." The victims were all ultimately diagnosed with PTSD, and JLB and JJB had to be removed from their grandmother's home for placement in a residential psychiatric facility. This type of significant response, which manifested in different psychological behaviors by each victim, was not adequately captured by the scoring of OV 4. Indeed, when the circumstance of the crime includes a location, such as the victim's home which causes a loss of a sense of security, the court does not clearly err in concluding that OV 4 did not adequately account for the circumstances of the offense. See *People v Lampe*, 327 Mich App 104, 129; 933 NW2d 314 (2019). The child victims here suffered life-altering psychological injuries that required substantial professional assistance. The victims were abused in their home where they should have had a sense of security with defendant, their stepparent, an individual responsible for their care and custody. When the children were confined to their rooms, all external stimuli were removed from that location. JLB testified that she was punished for an entire summer or approximately 73 days, and the only thing in her room was a bed and a blanket or sheet. Under the circumstances, the sentencing court properly found that the assessment of 10 points for OV 4 did not adequately account for the harm to the victims.

Moreover, the court explained its conclusion that the scoring of 50 points for OV 7 and 10 points for OV 10 were not adequately addressed in the sentencing guidelines because they did not fully contemplate the length of time that defendant's abuse persisted. OV 7, addressing aggravated physical abuse, is scored at a maximum of 50 points if a "victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). OV 10, addressing exploitation of a vulnerable victim, is scored at 10 points if the defendant "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b).

We agree with the court's finding that while OVs 7 and 10 accounted for some of defendant's conduct, they did not "fully account for the continuum of this severe of conduct over such a long period of time." Moreover, the sentencing court was entitled to conclude that the severity of the impact of the defendant's conduct on the victim received inadequate weight. *People v Lawhorn*, 320 Mich App 194, 210-211; 907 NW2d 832 (2017). Again, in this case, defendant's conduct involved instances of abuse, such as groundings, which lasted days or weeks. For example, JLB testified that defendant once grounded her for about 73 days. Defendant's abusive tactics also persisted over the period when the victims lived with him. Therefore, the court reasonably found that OVs 7 and 10 did not account for the length of defendant's abuse.

Additionally, the sentencing court reasoned that the guidelines as a whole did not adequately account for the seriousness of the offense because defendant's OV score was placed in Level IV, the highest level, which included scores of 75 points or more, but defendant had an actual OV score of 110 points. Thus, the sentencing court properly considered that the guidelines gave inadequate weight to defendant's total OV score. See MCL 769.34(3)(b).

Defendant further submits that the sentencing court failed to consider mitigating factors, including the age of defendant's prior convictions, his traumatic childhood, and his model behavior while incarcerated. But "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). Therefore, the sentencing court had no obligation to address this information when imposing a departure sentence. Even so, the resentencing court *did* consider mitigating evidence. The sentencing court explicitly considered the *Snow*[3] factors and stated that defendant's history and conduct in prison led it to depart upward from the guidelines by only 12 months.

Finally, the extent of the sentencing court's departure is a relevant consideration when reviewing a departure sentence for proportionality. *Milbourn*, 435 Mich at 659-660. In this case, the sentencing court's departure was modest, exceeding the minimum guidelines range by 12 months. See *Walden*, 319 Mich App at 353. The sentencing court also provided a clear justification for the extent of its departure, reasoning that defendant's personal history and evidence of rehabilitation warranted a smaller departure than had been previously imposed. Consequently, the sentencing court did not abuse its discretion in applying the principle of proportionality because it provided "adequate reasons for the extent of the departure sentence imposed." *Steanhouse*, 500 Mich at 476.

## III. STANDARD 4 BRIEF

Defendant also filed a Standard 4 brief[4] asserting that the prosecutor committed misconduct by knowingly allowing witnesses to present perjured testimony and that defendant was prejudiced by its admission. However, the issues that may be raised in an appeal are "limited by the scope of the remand." *People v Jones*, 394 Mich 434, 435; 231 NW2d 649 (1975). Therefore, the scope of this appeal is limited to examining the sentencing court's compliance with our directive that resentencing occur. See *id.* at 435-436. To allow defendant to raise trial-related matters in this, his third appeal, would effectively permit multiple appeals as of right from the same final determination and render the court rules governing the taking of an appeal as of right meaningless.

---

[3] In *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), our Supreme Court recognized that the following goals guided proportional sentencing: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses."

[4] See Administrative Order No. 2004-6, 471 Mich cii.

*People v Pickett*, 391 Mich 305, 316-317; 215 NW2d 695 (1974). Indeed, our court rules limit defendant's appeal to issues arising from his third sentencing proceeding. See MCR 7.203(A)(1) and MCR 7.202(6)(b)(iii). Accordingly, we decline to address defendant's claim of prosecutorial misconduct[5] related to his trial.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Anica Letica

---

[5] In addition to claiming that the victims, his stepchildren, committed perjury, defendant offered the victims' biological father as a "suspect in the abuse of the children." Suffice it to say, defendant's assertion is belied by his admissions to the police and the trial testimony from his own biological children, who witnessed or heard the abuse of their stepsiblings when they visited defendant.