*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

MEGAN JOYCE IMIROWICZ,

        Defendant-Appellee.

UNPUBLISHED
December 03, 2024
9:52 AM

No. 367620
Oakland Circuit Court
LC No. 2022-281519-FC

Before: FEENEY, PJ., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of unlawful use of a chemical irritant causing death, MCL 750.200j(1)(a) and (2)(e).[1]  Defendant was sentenced to one-year in jail and five years' probation.  The prosecution appeals as of right.  We affirm.

This case arises out of defendant throwing lye powder at her father, Konrad Imirowicz (the victim), while he was intoxicated, on October 1, 2021, at the victim's home in Groveland Township, Michigan.  The resulting chemical burns and complications eventually led to the victim's death on March 6, 2022.

Defendant and the victim lived together.  Defendant planned to celebrate her eighteenth birthday on the day of the incident, and approached the victim in the morning to obtain a ride to an appointment.  The victim was drunk and incapacitated, which upset defendant, who began to throw items at the victim, including lye powder.  Defendant then left the victim at home.  Later in the afternoon, defendant's friend, Kayla Bousquette, went to the victim's house upon defendant's request to obtain the victim's credit card information.  Bousquette discovered the victim lying on the couch covered in white powder and severe burns; she contacted defendant, who dismissed the victim's condition. She also contacted defendant's brother who told her to call an ambulance which

---

[1] Defendant was also charged with one count of domestic violence, MCL 750.81(2).  This charge was an alternative count to the unlawful use of a chemical irritant charge, and was dismissed by the parties upon defendant's conviction.

-1-

she did.  The victim was taken to the hospital where it was determined that he had severe burns all over his head and body and needed to have them debrided, which takes the first layer of skin off to facilitate the healing process.  The treating burn specialist, Dr. Seewald, estimated that 41% of the victim's total body surface area had "full thickness" burns, which is the "worst kind of burn."  The victim sustained third and fourth degree burns to most of his body, some of which resulted in erosion of his muscle tissue. The victim had grafting performed to help replace his damaged skin and received kidney dialysis as well as a tracheotomy.  Subsequently, the victim's legs were both amputated, and he eventually died as a result of his chemical burns and complications.

The jury found defendant guilty of unlawful use of a chemical irritant causing death.  The presentence investigation report noted that the minimum sentence guidelines range was 51 to 85 months' imprisonment and recommended that defendant be sentenced to a term of 5 to 25 years' incarceration at the Michigan Department of Corrections, with 506 days' jail credit.  The trial court sentenced defendant to one-year in jail and five years' probation.  The prosecution now appeals.

We disagree with the prosecution's argument that the trial court abused its discretion when sentencing defendant because it failed to 1) consider the guidelines, 2) justify the sentence imposed, and 3) issue a proportional sentence.

On appeal, "sentencing decisions are reviewed for an abuse of discretion by determining whether they violated the principle of proportionality." *People v Posey*, 512 Mich 317, 325; 1 NW3d 101 (2023).  "[T]he principle of proportionality simply 'requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Lydic*, 335 Mich App 486, 501; 967 NW2d 847 (2021) (citation omitted). "[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *Posey*, 512 Mich at 352.  Accordingly, "[t]he sentencing court abuses its discretion if the sentence imposed is disproportionate to the seriousness of the circumstances involving the offense and the offender." *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 3.

"The trial court's fact-finding at sentencing is reviewed for clear error." *People v Lampe*, 327 Mich App 104, 125-126; 933 NW2d 314 (2019).  "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at 111 (quotation marks and citation omitted).

First, the prosecution contends that the trial court abused its discretion by failing to consider the guidelines when sentencing defendant.  We disagree.

Although sentencing guidelines are no longer mandatory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion," and trial courts "must consult those Guidelines and take them into account when sentencing." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015) (quotation marks and citation omitted); see also, *Posey*, 512 Mich at 347.

The prosecution's argument, that the trial court failed to consider the guidelines when sentencing defendant, is unpersuasive.  The prosecution contends the trial court barely mentioned

the guidelines during the sentencing hearing, nothing in the record shows that the court accounted for the guidelines, and while the trial court was aware of the guidelines, it nonetheless ignored them. The court referenced the guidelines multiple times during the sentencing hearing, however. At the beginning of the hearing, the court accepted the parties' stipulations to change the assessments for offense variable (OV) 5 and OV 10. With these changes, the trial court acknowledged that "[t]he guidelines [did] not change." The court also stated that it reviewed the presentence investigation report (PSIR), which noted the guidelines minimum sentence range of 51 to 85 months' imprisonment. As the court sentenced defendant, it confirmed with the prosecution that the guidelines range was 51 to 85 months, and warned defendant that if her probation is not successful, "the prison term of 5 to 25 years [was] on the table." These facts support that the trial court consulted and considered the guidelines when sentencing defendant, and decided to depart from them.

The prosecution also contends that the trial court abused its discretion by failing to justify the extent of its downward departure from the guidelines. Again, we disagree.

When imposing a departure sentence, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been[.]" *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). "[I]f it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified." *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). "[W]hen the connection between the reasons given for the departure and the extent of the departure is unclear," a sentence cannot be upheld. *Id.*

The prosecution concedes that "the trial court adequately justified a departure sentence by finding that defendant's youth and immaturity and her family life as a minor mitigated the crime." Nonetheless, it argues that the trial court abused its discretion by failing to justify the particular departure made or the extent of the downward departure. This argument overlooks the fact that the trial court acknowledged "the public good does not require that the Defendant suffer the penalty imposed by law" before imposing its sentence. Further, the trial court detailed its considerations at length during the sentencing hearing, which included defendant's home life and the victim's alcoholism, defendant's limited criminal history, and the defendant's mental health struggles. Citing United States Supreme Court cases for support, the trial court stressed defendant's youth and lack of brain development, recognizing the impact of age on cognitive and emotional development, and capacity for rehabilitation and change. The court recognized that defendant had the capacity for change and reformation, and that she was "not a threat to society," and placed defendant on "an intensive probation program" to "allow her to get on track," rather than "suffer the penalty imposed by law." This articulation is sufficient justification of the basis for the court's imposition of sentence, including its decision to impose jail time and intensive probation in lieu of a lengthier prison sentence.

The prosecution further argues that, based on the guidelines, "the court did not adequately articulate" how defendant's youth "outweighed the aggravating factors of defendant's use of a weapon, the lethal potential of that weapon, the psychological injury to [the victim's] family, defendant's exploitation of [the victim's] vulnerability when he was intoxicated," and the extent of the victim's physical injuries. Notably, the court explained that as a result of defendant's youth

and lack of cognitive ability, it did "not believe that a child of [defendant's] age knew or understood the consequences of throwing items at [her] father or the damage it would cause him." The court found that defendant's youth mitigated the assessed offense variables because defendant did not understand the extent of her use of the weapon (i.e., the powdered lye) or the consequences of her actions, including the extent of damage to the victim and resulting psychological injuries to the family.

The prosecution also argues that, because the departure was so large, the court was required to provide a "more thorough justification than [with] a small departure." The guidelines' minimum sentence range for defendant was 51 to 85 months' imprisonment, and the court sentenced defendant to 12 months in jail and five years' probation, making the downward departure 39 months, or 3¼ years.[2] As defendant points out, however, the case that the prosecution cited to demonstrate that the trial court needed a more thorough articulation for departing noted that a 20-month departure was "relatively small." *People v Carlson*, 332 Mich App 663, 676; 958 NW2d 278 (2020); but cf. *Smith*, 482 Mich at 306 (referring to 15 years as a "large departure made."). Especially in view of the intensive probation imposed by the trial court, we are not convinced that a 39-month downward departure is particularly enormous. Even so, as discussed above, the trial court provided ample justification for the sentence imposed.

The prosecution additionally argues that the trial court abused its discretion by issuing a sentence that was not proportional to the seriousness of the circumstances surrounding defendant and her offense. We disagree.

"[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *Posey*, 512 Mich at 352. The key test is "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. at 348 (quotation marks and citation omitted). This Court has recognized a number of factors for determining "whether a departure sentence is more proportionate than a sentence within the guidelines range," including, "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525 (citations omitted). Other factors include "the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation[.]" *Id*. at 525 n 9 (quotation marks and citations omitted).

The prosecution argues that the trial court failed to adequately consider the nature of the offense and the seriousness of the victim's injuries. We acknowledge that the victim's resulting injuries from the chemical burns, which ultimately led to his death, were severe; however, this fact

---

[2] To demonstrate the enormity of the departure, the prosecution compared the instant departure to a hypothetical upward departure of 21 years. Despite the prosecution's assertion that the departure in this case is "less than a quarter of the minimum sentence called for by the guidelines," we are not convinced that an upward departure of 21 years is comparable to a downward departure of less than four years.

alone does not demonstrate an abuse of discretion where the trial court acknowledged that defendant was found guilty of a "serious crime," and noted that it "[did] not take the charge lightly[.]" As the judge acknowledged, she "looked at everything in this case" and "sat through the trial[.]" It follows that the judge was well aware of the seriousness of the offense. Indeed, at trial, she warned the jury that the photographs of the victim's injuries were "shocking." Despite this, the trial court explicitly recognized that "the sentence must be proportionate to the seriousness of the crime surrounding the offense and the offender," and still determined that "the public good does not require that the Defendant suffer the penalty imposed by law."

The trial court also had the opportunity to reconsider its proportionality determination upon the prosecution's objection. Based on the other factors it articulated, the court maintained that it was "satisfied with regard to the proportionality." In particular, the court strongly emphasized defendant's potential for rehabilitation given her age, noting that "this is a child who I think has the ability to . . . have a good life and to be a contributing member of society," which is a relevant consideration when evaluating proportionality. See *Dixon-Bey*, 321 Mich App at 525 n 9.

The prosecution also maintains that the court's discussion of the victim was extremely unsympathetic by detailing his deficiencies without considering the seriousness of the offense. The pertinent consideration when making a proportionality determination is whether a sentence is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Posey*, 512 Mich at 356 (quotation marks and citation omitted). Defendant's home life, including her relationship to the victim and the victim's parenting deficiencies, are pertinent considerations when evaluating the circumstances surrounding defendant and her offense. Accordingly, the trial court did not abuse its discretion because it properly evaluated the involved circumstances, and imposed a proportionate sentence in light of those circumstances.[3]

Finally, we disagree that the trial court clearly erred by making and relying on erroneous factual findings during sentencing. In its reply brief, the prosecution argues that the trial court's findings, including that defendant had to care for her father and be an adult in the home, were unsupported by the record. In making these observations, the court relied on the presentence investigation report that noted defendant quit her job to care for the victim. Because the report detailed that defendant cared for the victim, we are not "left with a definite and firm conviction that a mistake was made" with regard to the trial court's conclusions. *Lampe*, 327 Mich App at 111 (quotation marks and citation omitted). Further, to the extent that the prosecution disagrees with the information in the presentence investigation report, it had the opportunity to object at the hearing and did not do so. See *Lampe*, 327 Mich App at 122 ("[T]he trial court gave defense counsel every opportunity to speak and to consult with defendant at resentencing, but defendant

---

[3] The court also ordered 5 years of "intensive" probation including tether, a psychological evaluation plus following all recommendations for medication and mental health therapy, obtaining a high school diploma or GED, 9 pm curfew, cognitive behavior therapy, no purchase or possession of drugs or alcoholic beverages or entering "establishments that dispense them," drug and alcohol testing, outpatient or residential substance abuse treatment, no assaultive or threatening behavior, no possession of a firearm or deadly weapon, and a six month review of probation with the 5 to 25 years still "on the table" if she was not successful with her probation.

failed to make an effective challenge in the trial court, and thus, he is not entitled to relief on appeal.").  We find that the trial court's extensive evaluation of the factors it considered in imposing defendant's sentence was more than adequate to explain the departure.

Affirmed.


/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace