*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　　Plaintiff-Appellee,

v

VERTESE STEVEN WOODS,

　　　　　　Defendant-Appellant.

UNPUBLISHED
February 26, 2026
2:32 PM

No. 370157
Macomb Circuit Court
LC No. 2022-002742-FC

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his judgment of sentence, after a jury found him guilty of committing involuntary manslaughter, MCL 750.321; receiving and concealing stolen property, MCL 750.535(7); two counts of assault with a dangerous weapon, MCL 750.82; first-degree fleeing and eluding, MCL 257.602a(5); operating while license suspended causing death, MCL 257.904(4); failure to stop at scene of accident causing death, MCL 257.617(3); moving violation causing death, MCL 257.601d(1); malicious destruction of property between $200 and $1,000, MCL 750.377a(1)(c)(1); and larceny less than $200, MCL 750.356(5). Defendant was sentenced to concurrent terms of 10 to 15 years in prison for involuntary manslaughter, first-degree fleeing and eluding, operating while license suspended causing death, and failure to stop at scene of accident causing death; three to five years in prison for receiving and concealing stolen property; two to four years in prison for the two counts of assault with a dangerous weapon; one year in jail for moving violation causing death; and 93 days in jail for malicious destruction of property between $200 and $1,000 and larceny less than $200. The 10-year minimum sentence represented a six-month upward departure from the applicable guidelines range of 62 to 114 months in prison.

On appeal, defendant argues that the trial court's guidelines departure is disproportionate to the crimes he committed and that the trial court did not give an adequate explanation for its departure from these guidelines. We disagree and affirm.

## I. FACTS

This case arises from a crime spree that culminated with a vehicular manslaughter when defendant attempted to flee from the police. On December 20, 2021, defendant was scheduled for a courthouse

hearing with regard to his Mental Health Court probation. He stole a vehicle to attend that hearing instead of taking a bus, as he apparently usually did. This was only the first in a series of imprudent—and ultimately fatal—decisions by defendant that day.

At trial, defendant acknowledged that he was responsible for the death but explained while testifying that he was "just not in [his] right mind" at the time. According to defendant's PSIR:

> On 12/20/2021, in the City of Mount Clemens, an officer located a stolen vehicle out of Fraser parked at a meter on Main Street. Several MATS units responded to the area to assist. The vehicle was a 2014 Ram 1500 and belonged to Four Seasons Kanga Roof Company. Detectives set up fixed surveillance on the vehicle.
>
> At approximately 1323 hours, . . . Vertese Woods[] was observed approaching the vehicle and opened the rear driver side door and placed a bag in the back seat. An officer converged on the vehicle from the rear to block the driver from reversing and driving away. By the time the officer arrived at the vehicle, the defendant was in the driver's seat and started the ignition. An officer activated the patrol vehicle lights and exited the vehicle giving commands to "Police! Stop!" The defendant reversed the vehicle aggressively, striking the officer's undercover vehicle, pushing it backwards. The defendant drove the vehicle over the curb, striking a City of Mount Clemens parking meter causing it to be bent. A citizen was walking in front of where the Ram went up the curb and had to quickly maneuver out of its path to avoid being struck by the vehicle. Several other subjects were sitting upon a picnic table/bench that also were narrowly missed being hit by the fleeing vehicle.
>
> The officers at that time lost sight of the vehicle and began canvassing the area to attempt to locate it again. The Macomb County Sheriff's Office received a call that the vehicle was seen driving recklessly westbound on Hubbard Avenue. At 1326 hours, the Macomb County Sheriff's Office received several 911 calls for a rollover accident involving a pickup truck with a ladder rack at North Rose and Cass Avenue and the driver of the pickup was fleeing on foot from the crash. Several units responded to the scene.
>
> Upon arrival to the scene, officers observed two vehicles involved in the crash. The Ford Fusion, driven by the victim, . . . was traveling eastbound on Cass Avenue. As the Fusion entered the intersection it was struck on the driver's side by the Dodge Ram, driven by the defendant. The Ford Fusion was pushed in a southeast direction, struck a curb and rolled onto its passenger side. After impact, the Ram rolled on its side, struck a utility pole and came to rest on its driver's side. The driver of the Ford Fusion . . . was transported to McLaren Hospital where she was pronounced deceased.
>
> Officers were notified by the Principal of Prevail Academy that the defendant tried to gain access into the school; however, he was not able to gain entry and subsequently took a green children's bike and rode away on it. An officer located the defendant and observed him attempting to ride away on the bike and struggled to ride the bicycle. The officer followed the defendant who turned into a driveway and fell off the bicycle. The officer pulled directly into the driveway behind the defendant and yelled commands, "Police, come here." The defendant began walking towards the officer as the officer yelled,

"get down on your knees, face away from me," and continued giving verbal commands to the defendant to remain laying on the ground with his hands behind his back. . . .

Four separate SIRs were prepared for sentencing, one for each of the four Class C offenses of which defendant was convicted. Each SIR indicated a sentencing guidelines range of 62 to 114 months in prison and, relevant for the purposes of this case, reflected a PRV score of at least 150 points, which far exceeds the 75-point cap. The SIR scoring was not challenged at sentencing.

Under MCL 769.34(2)(b), which provides that "[t]he court shall not impose a minimum sentence, including a departure, that exceeds 2/3 of the statutory maximum sentence," the trial court was statutorily prohibited from imposing a minimum sentence of greater than 10 years, as each of the Class C offenses was subject to a 15-year statutory maximum. The trial court decided to impose the 10-year minimum sentence, which represented a six-month upward departure from the guidelines, reasoning as follows:

> And the part that really troubles the Court about this case is that the court system gave you a second chance. Well it was beyond a second chance, because he had how many felonies, eight? Eight felonies before he committed this horrific act? And all of this to help you, to be kind to you, to help you overcome your mental health issue. And what do you do in return? You steal a truck when you could have taken the bus, to go to your court hearing, to go to your first probation meeting, right?
>
> * * *
>
> First Mental Health Court meeting.
>
> You put quarters in the meter and then you come out and you get back in the stolen truck like it was yours. And the police see it, and they could have stopped you right there and none, none of these people would have suffered the loss they have. But it wasn't enough. You didn't want to get caught. So you run over a parking meter, right? You nearly run over some homeless guys. You nearly run over the deputies trying to do their job and then you take off like a bat out of hell and three minutes later she's dead, gone, in a horrible way. You know, her family and friends were there in the hospital. You read it. You read about her condition when she was there.
>
> Forgiveness? I don't know, that's up to them if they forgive you. It's not my job to forgive you. My job is to sentence you, and the Court has to consider all of the factors.
>
> And the State of Michigan favors individualized sentencing. This sentence must fit the circumstances of the case and the Defendant. This Court has to consider discipline or punishment of the wrongdoer, potential for rehabilitation, deterrence to others and protection of the community.
>
> The Court finds that there is no further opportunity for rehabilitation, that you should at the least serve the maximum this Court can impose. And the Court does find that exceeding the guidelines, which are advisory, is appropriate in this case. And the Court considers all the factors. As I said, the nature of how each of these offenses accelerated, one to the other. It starts with the stolen truck, you know, and it turns into fleeing from the police, assault with a dangerous weapon, and ultimately as you were found guilty, of

involuntary manslaughter. So all of these factors the Court has considered, as well as that there is no further opportunity for you to be rehabilitated. You were given a gift, Mental Health Court, freedom, treatment, and you threw it away and you killed someone. So exceeding the guidelines is definitely appropriate in this case.

The trial court sentenced defendant as noted. This appeal followed.

## II. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted).

## III. DISCUSSION

Defendant argues that the trial court abused its discretion by departing upward from the sentencing guidelines by six months without there being an adequate justification. We disagree.

While the sentencing guidelines are advisory, "the guidelines remain a highly relevant consideration in a trial court's exercise of sentencing discretion that trial courts must consult and take into account when sentencing." *Steanhouse*, 500 Mich at 474-475 (cleaned up). "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. at 475 (quotation marks and citation omitted). "[R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range . . . include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted). Factors not considered by the guidelines may include "the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted). "[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations omitted).

Here, the trial court reasoned that an upward departure was warranted because of the troubling nature of the crime spree, which began with a stolen truck and culminated with manslaughter. The trial court also considered the fact that defendant has no apparent potential for rehabilitation, as demonstrated by the fact that he has an extensive criminal history and was "given a gift, Mental Health Court, freedom, treatment, and [he] threw it away and [he] killed someone." The trial court's analysis of these facts justifies the relatively minimal six-month upward departure it imposed.

Further, with regard to the nature of defendant's crime spree, it is troubling that he stole a truck to attend a court hearing, and then recklessly fled from the police when they confronted him. In other words, this entire situation could have been avoided if, as the trial court observed, defendant had taken a bus as

he originally intended that morning instead of stealing a truck. The complete needlessness of this ultimately fatal scenario, which demonstrates defendant's total lack of concern for his own criminality and the safety of others, is a fact that is not considered by the guidelines. See *id*.

Further, and more importantly, defendant's extensive criminal record and the fact that he was sentenced to Mental Health Court at the time of his conduct supports the trial court's determination that he has no apparent potential for rehabilitation. See *Lampe*, 327 Mich App at 126. While the trial court expressly referenced the fact that defendant had eight prior felony convictions, as the PSIR explained, defendant also had 15 prior misdemeanor convictions, one juvenile adjudication, and violated probation when he committed this crime spree. Indeed, the SIRs reflect a PRV score of 150 or 152 points, which far exceeds the 75-point cap on the applicable sentencing grid.[1] This fact alone justifies the relatively minimal six-month upward departure, regardless of the particular facts of the underlying crimes. See *People v Smith*, 482 Mich 292, 308-309; 754 NW2d 284 (2008) (explaining that an upward departure may be justified when the defendant's scoring on the sentencing variables exceeds the maximum recognized by the sentencing grid).

## IV. CONCLUSION

The 10-year minimum sentence, which represented a six-month upward departure from the applicable sentencing guidelines, was reasonable in light of the fact that defendant has an extensive criminal history not fully accounted for by the guidelines and the fact that the overall, ultimately fatal crime spree demonstrated a lack of concern for safety or criminality also not captured by the guidelines. By the same measure, it is a proportionate punishment for the crimes committed. Therefore, the trial court did not abuse its discretion or otherwise err by imposing that sentence. We affirm.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

[1] The SIRs reflect an OV score of 90 or 100 points, which also exceed the 75-point cap.