*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

V

NICHOLAS HUNTER MUI,

      Defendant-Appellant.

UNPUBLISHED
May 14, 2026
10:18 AM

No. 374521
Kent Circuit Court
LC No. 24-000603-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant, Nicholas Hunter Mui, appeals from a judgment of sentence rendered by the Kent Circuit Court on September 5, 2024. Defendant was charged and, on July 15, 2024, pleaded guilty to one count of violating MCL 750.159i(1) (conducting a criminal enterprise) which carries a maximum of 20 years' imprisonment if convicted (MCL 750.159j). The prosecutor dismissed all additional charges in the plea agreement, including seven counts of violating MCL 445.65 (identity theft) and one count of violating MCL 752.797(3)(F) (computers–using computers to commit a crime). The sentencing guidelines were scored at 12 to 20 months. The sentence imposed was 5 years to 20 years' incarceration, an upward departure. Because the trial judge explained his reasons for the departure sentence on the record and because such reasons were grounded in the undisputed record, the sentence imposed falls within the category of reasonable and principled outcomes. We affirm.

## I. BACKGROUND

During a 9-month period, defendant acquired a computer program that allowed him to obtain "thousands of hits" of usernames and passwords for mPerks log-in information. MPerks is a rewards program applicable in Meijer stores. No credit card information, addresses, or Social Security numbers were obtained. He retrieved these log-ins in blocks and sold them through a website in exchange for cryptocurrency or a deposit to a CashApp. He ran the program "numerous times," affecting approximately 29,291 customers. The total restitution exceeded $1 million. Defendant forfeited more than $600,000 in cryptocurrency to the Michigan State Police prior to sentencing toward this restitution, and Meijer reimbursed all affected customers for their lost

rewards. An Affidavit of Probable Cause included in the court file states that "Mui admitted to having been committing these crimes with numerous corporations (not just Meijer) and sites since 2019 for profit." However, the mPerks account was the only one discussed on the record at the sentencing hearing or in the presentence investigation report.

Defendant pleaded guilty on July 15, 2024, to one count of conducting a criminal enterprise, which carries a maximum penalty of 20 years. As part of the plea agreement, the remaining counts were dismissed by the prosecutor and defendant agreed to forfeit more than $600,000 in cryptocurrency and his computer tower. He was sentenced on Thursday, September 5, 2024. Defendant had no prior criminal record, and three offense variables were applied and assessed as follows: OV-16[1] and OV-12[2] were each assessed at 10 points, and OV-13[3] was assessed at 0. The resulting guidelines sentence was 12 to 20 months. At the sentencing hearing, the prosecutor stated that "it's clear that but for the efforts of—of Trooper Proefrock standing next to me, this crime would have been ongoing. It would have never stopped." However, the prosecutor acknowledged that defendant agreed to forfeit an amount of money toward his restitution that was "unusual" and that "his continued efforts and cooperation with [the prosecutor's office], and the Michigan State Police [allowed] us to gain insight into how [defendant] committed his crime, and how we can protect our systems in the future." Defendant's input was "valuable" and the prosecutor thanked him for his "cooperation and the amount of assets that he is able to provide to help right the wrong, [which] was included in [the] plea offer, reducing the other counts of Identity Theft, and having him only plea to the Count I of CCE, Criminal Enterprise."

Defense counsel spoke of mitigating factors in defendant's life. He was 22 years old at the time of sentencing. A high school graduate, he had no criminal record or history of substance abuse. Fifteen character letters were submitted in his favor. A son of hardworking immigrants, his community was "shocked and saddened" when they learned of this infraction, and his attorney asked the court to "fashion a sentence" that involved a stay in the Kent County Jail and "a term of probation after that."

The court did not accept defense counsel's request. He sentenced defendant to "a minimum of 5 years to a maximum of 20 years" with the Michigan Department of Corrections, as well as restitution of $1,087,168 in addition to court costs, fines, and fees.

On the record, the trial judge stated that he was "very familiar with the facts and circumstances here" and that he read and reviewed "numerous letters from family and friends."

---

[1] Offense Variable 16 applies to crimes in which "property [is] obtained, damaged, lost, or destroyed." Ten points are assessed when the "[t]he property had a value of more than $20,000 or had significant historical, social, or sentimental value." MCL 777.46(1)(d).

[2] Offense Variable 12 applies when the criminal act includes "contemporaneous felonious criminal acts." Ten points are assessed when "[t]hree or more contemporaneous felonious criminal acts involving other crimes were committed." MCL 777.42(1)(c).

[3] Offense Variable 13 applies when the criminal act reflects a pattern of criminal behavior. Zero points were assessed for this variable. MCL 777.43(1)(g).

He also acknowledged defendant's age, lack of criminal record "as an adult or as a juvenile" and that he has "yet to be in prison, jail, or on probation." The court was also aware that scoring of the guidelines resulted in a sentence between 12 and 20 months.

However, the trial court felt the significance of the offense was not reflected in the guidelines. Defendant "pled guilty to [his] involvement in a Criminal Enterprise, which carries a maximum penalty of 20 years." In the trial judge's words, "this was not a good situation." The log-in information was sold "on the internet to people who were buying those for criminal reasons . . . and [defendant] knew that." Moreover, the trial judge claimed that defendant admitted to "having been committing these crimes with numerous corporations, not just Meijers [*sic*] . . . since 2019 for a profit." In the trial judge's words:

> "[T]hat's just not acceptable. That behavior is outrageous. This affects thousands of people. You basically stole this information and sold it to people that were going to use it for illegal reasons, and you knew you were doing it, and this went on for a long time.
>
> You put these individuals at risk for potentially down the road, losing hundreds or thousands of dollars. And there's no excuse or justification for this.
>
> You sold this on the dark web. You knew that these people were involved in—in criminal activity. There's just no excuse for that whatsoever.

The trial judge noted that the sentencing guidelines as calculated "call for a minimum sentence between 12 and 20 months," and that he was aware of the relevant caselaw and his duty to "impose a reasonable and proportioned sentence." But, in the trial judge's words, "there are many reasons here that these guidelines do not include a number of things." The guidelines assessed OV 16 at 10 points, which is for $20,000, whereas the criminal offense involved "more than a million. That's 50 times the 20,000.00." Moreover, "there are thousands of people that this affects." Neither the dollar amount nor the number of customers affected were "taken into effect appropriately in the guidelines." Accordingly, the trial court sentenced defendant to a departure sentence up to the maximum authorized for the offense to which he pleaded.

## II. ANALYSIS

### A. STANDARD OF REVIEW

No action was required for defendant to preserve his objection to sentencing guidelines on appeal. "There is no preservation requirement for review" of a sentence that is more severe than the guidelines recommendation. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008).

The standard of review is abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). Trial courts have discretion to depart from the sentencing guidelines range, as long as the ultimate sentence imposed is reasonable. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). Reasonableness is measured by proportionality, i.e., whether the sentence imposed is "proportionate to the seriousness of the matter for which punishment is imposed." *People v Milbourn*, 435 Mich 630, 635-636; 461 NW2d 1 (1990). In evaluating

reasonableness on appeal, the abuse-of-discretion standard "acknowledges that there will be circumstances in which there will be . . . more than one reasonable and principled outcome" and the trial court does not abuse its discretion by selecting one of these principled outcomes. *People v Butka*, 514 Mich 366, 376; 22 NW3d 429 (2024) (quotation marks and citations omitted). In this case, the sentence imposed by the trial court satisfies this standard.

## B. APPROPRIATENESS OF THE SENTENCE

The trial court's sentence does not fall outside of the range of reasonable and principled outcomes. Legislative guidelines are not mandatory but, rather, "remain a useful tool that must be taken into account when sentencing a defendant, and a trial court must justify the [departure] sentence." *People v Lampe*, 327 Mich App 104, 126-127; 933 NW2d 314 (2019) (quotation marks and citation omitted). The question is "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017), quoting *Steanhouse*, 500 Mich at 472. Factors that may be considered by the trial court include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as . . . the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).]

The trial court's determination that the upward departure was proportionate to the seriousness of the offense and that the severity was not adequately reflected in the guidelines as scored is not outside of potential reasonable and principled outcomes. The record demonstrates thoughtful analysis of the criminal charge to which defendant pleaded, the seriousness of the offense including its impact on the public, and the fact that the guidelines as scored did not account for this.

Contrary to defendant's argument on appeal, the trial judge did not overlook mitigating factors such as defendant's young age, community support, and lack of criminal record. The trial judge read and reviewed the file, including the numerous letters of support written on defendant's behalf. The trial judge expressed no opinion regarding defendant's character not reflected in the uncontested facts in the court file. He, ultimately, departed from the guidelines because of the severity of the offense, i.e., the dollar amount involved, the thousands of customers affected, and defendant's culpability in knowingly selling these persons' information on the dark web to persons or entities that were likely to do malevolent things with it, and the fact that the offense variables as scored did not reflect this.

This sentencing is unlike *Dixon-Bey*, 321 Mich App at 525, in which the Court of Appeals found a trial court abused its discretion by significantly departing from the guidelines because the trial judge "did not adequately explain why a minimum sentence of 35 years was more proportionate than a different sentence within the guidelines would have been." The Court of Appeals found the record did not support the trial judge's description of the defendant as having a "depraved heart" or a "recidivist . . . criminal" deserving of a greater punishment than the guidelines allowed, when, in fact, her prior record variable score was zero and nothing in the court

file supported a finding that her background supported this. *Id.* at 524-526. Moreover, the trial judge's reasons for the departure based on the severity of the offense reflected reasons included in the offense variables as assessed, or in an offense variables that was expressly found inapplicable. And the trial judge's description of the offense indicated he found it premeditated when, in fact, the jury verdict did not reflect this. *Id.* at 526-529.

The record presented at defendant's sentencing is different. The trial court did not malign defendant's character. Rather, he identified factors related to the seriousness of the crime that were not adequately reflected in the guidelines as scored. He explained that the dollar amount involved, the number of people affected, and an affidavit in the record indicating that defendant admitted to carrying out this crime with more than just Meijer were factors not accounted for in the guidelines as scored. The only statement by the trial court that was not in the presentencing report is a reference to defendant conducting a similar activity with other corporations which came from the court file and not from the court's opinion. Michigan jurisprudence authorizes trial courts to consider facts neither admitted nor found by a jury when imposing a sentence. *Lockridge*, 498 Mich at 391-394. And this was one of several stated factors that led the court to find the guidelines insufficient. Defendant's claim that there was only one victim ignores the uncontested fact that this crime involved thousands of customers whose log-in information was breached and sold on the dark web.

In sum, the trial court found the seriousness of the crime to which defendant pleaded was not adequately recognized by the guidelines and, therefore, ordered a sentence that departed from it. This Court does not find the sentence so disproportionate as to constitute an abuse of discretion, nor was the upward departure from the guidelines outside the range of reasonable and principled outcomes given the record present here.[4]

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

---

[4] We acknowledge that there were over $1,000,000 in losses; *fifty* times the amount considered in the sentencing guidelines. Of this, defendant made restitution in the amount of approximately $600,000 and the defense asserts this supports the argument that there should have been no upward departure. This argument, however, does not account for the remaining $400,000 in restitution still being the equivalent of *twenty* times the amount taken into consideration by the sentencing guidelines.